Shadeen AL–AMIN, Abdul Hamid Sayeed, John Smalls a/k/a Yahya A. Sabor, and Tyrone Jenkins a/k/a Abdul Latif, Plaintiffs,

v.

The CITY OF NEW YORK, James Riches, Timothy Hanley, Maureen Montero "John Doe," "Richard Roe" and "Mary Roe," the names of "John Doe," "Richard Roe" being fictitious, the real names of these defendants being unknown to plaintiffs, and fictitious names being intended to designate certain members of the New York City Police Department involved in the events complained of herein, Defendants.

No. CV–95–4365 (RJD).

United States District Court, E.D. New York.

Oct. 14, 1997.

Morton S. Minsley, New York, NY, for plaintiffs.

Paul A. Crotty, Corporation Counsel of the City of New York by Virginia Waters, Assistant Corporation Counsel, New York, NY, for defendants.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiffs are four African–American Muslims who were arrested and issued summonses for unlawful vending on several occasions in 1994 and 1995. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violation of their rights under the First, Fourth and Fourteenth Amendments, and pursuant to New York Civil Rights Law §§ 40–c and 44–a for racial and religious discrimination. Plaintiffs seek a declaration that the New York City vending law ("General Vendors Law") as applied to them is unconstitutional. The complaint also alleges false arrest and imprisonment claims. Defendants have moved for partial summary judgment to dismiss so much of the first, fourth and sixth causes of action that allege violation of plaintiffs' First Amendment rights to free exercise of religion and free speech, and that allege religious discrimination under the New York Civil Rights Law.[1]

## BACKGROUND

Plaintiffs stationed themselves in the Fulton Mall area in downtown Brooklyn, where they "propagated information concerning their religion, and solicited donations on behalf of their faith" in exchange for books, pamphlets, perfume oils, incense and bracelets. Compl. ¶ 13; see also Al–Amin Depo. at 41–45; Sayeed Depo. at 19–21, 49; Smalls Depo. at 13–14; Jenkins Hrg. Tr. at 5. Plaintiffs (except for Jenkins) had engaged in these activities on the Fulton Mall full-time, for many years. Al–Amin Depo. at 43, 45, 54; Sayeed Depo. at 20, 31; Smalls Depo. at 12–13, 16–17; Jenkins Hrg. Tr. at 8. As plaintiff John Smalls testified,

I have books, I have religious books, I have religious oils, religious incense and religious books, and I have fliers and pamphlets, and I speak to people and I invite them to join Islam, and some people join, and some people buy religious articles and give me a donation.

Smalls Depo. at 13–14. According to plaintiffs, the object of their activities was to propagate Islam. Sayeed Depo. at 20–21. Plaintiffs testified that they sometimes donated some or all of their earnings from the sales to mosques. Al–Amin Depo. at 52–53; Sayeed Depo. at 26, 33–34; Smalls Depo. at 16.

Plaintiffs were issued New York City Environmental Control Board summonses for violations of the General Vendors Law. Compl. ¶ 41. It is important to note that plaintiffs are not prohibited from engaging in a broad spectrum of missionary activity. Defendants agree that plaintiffs may sell and distribute books and pamphlets, may disseminate their religious beliefs, and may solicit funds for religious purposes in the Fulton Mall area, all without the need for a general vendor's license.

## DISCUSSION

### A. The General Vendors Law

The General Vendors Law, set forth in New York Administrative Code ("Admin.Code") §§ 20–452 et seq., regulates the retail sale of non-food goods and services in public streets, parks and other public spaces in New York City. Pursuant to this regulatory scheme, a "general vendor" is defined as "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, [non-food] goods and services … in a public space." Admin. Code § 20–452(b).

A general vendor of non-food goods and services, except for exclusively written material, must obtain a general vendor's license from the Department of Consumer Affairs. Id. § 20–453. The total number of licenses

---

1. Defendants fail to address plaintiffs' claim of religious discrimination in violation of New York Civil Rights Law § 40–c (equal protection provision; prohibits discrimination and harassment on the basis of, in pertinent part, race, color and creed) and § 44–a (prohibits discrimination in public places on the basis of, in pertinent part, race, color and creed). Because the parties do not brief the issue, the Court does not consider or decide the state law religious discrimination claim.

in effect at any one time in New York City is limited to 853.[2] *Id.* § 20–459(a). There is a long waiting-list of individuals seeking to obtain a general vendor's license. Waters Decl. at 6; *Bery v. City of New York,* 97 F.3d 689, 697 & n. 7 (2d Cir.1996) ("a 500 to 5000 person waiting list makes [applicants'] prospects of securing a license apparently nonexistent, a fact conceded at oral argument"), *cert. denied,* — U.S. —, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997).

The General Vendors Law also prohibits general vending even with a license, except vending of exclusively written matter, in certain zoning districts, including zones C4 and C5. Admin. Code §§ 20–465(g), 473. The New York City Council has made findings that

> the presence of general vendors in certain parts of the city has caused serious congestion on the streets and sidewalks, preventing the regular flow of pedestrian and vehicular traffic, forcing pedestrians off the sidewalk, and thereby creating the increased potential for automobile and vehicular accidents and posing an extremely serious threat to the health, safety, and well-being of citizens of, and visitors to, the city.

Local Law 50/1979 § 1; *see also* Local Law 40/1988 § 1. The nine block area on Fulton Street, known as the Fulton Mall, is zoned C5–4, triggering the application of Admin. Code § 20–465(g) which prohibits general vending. Def. Rule 3(g) Stmnt. ("Def.3(g)") at 1–2; Waters Decl. at 8–9. Also, pursuant to Admin. Code § 20–465.1 and 6 RCNY (Rules of the City of New York) §§ 2–310, 314, the Fulton Mall area has been determined to be regularly too congested to permit general vending.

**2.** The restriction on the number of general vendor's licenses does not apply to veterans. Waters Decl. at 6 & n. 4.

**3.** The express language of the vending regulations does not restrict the mere *display* of merchandise. *See* Admin. Code § 20–452(b) (general vendor is one "who hawks, peddles, sells, leases or offers to sell or lease ..."). Thus, plaintiffs would be free to display one or two samples of oil and incense in order to attract pedestrians and engage them in conversation about Islam.

The vending of written material, such as books and pamphlets, is permitted on the Fulton Mall, and no general vendor's license is required. *See* Admin. Code §§ 20–453, 473. There is no law that prohibits proselytizing or soliciting funds for religious purposes on New York City sidewalks, including the Fulton Mall [3] Def. 3(g) at 2.

## B. *Free Exercise of Religion*

Plaintiffs claim that the General Vendors Law, as applied to them, is unconstitutional because it violates their right to free exercise of religion. Defendants seek dismissal of claims raising a free exercise challenge because as a matter of law, the regulations in question do not offend plaintiffs' right to free exercise of religion. The Court agrees.

Summary judgment is appropriate where the court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the court must draw all inferences and resolve all ambiguities in favor of the non-moving party. *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citation omitted).

The constitutionality of the General Vendors Law under the Free Exercise Clause is evaluated by applying the legal standard set forth in *Employment Div. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *See City of Boerne v. Flores,* — U.S. —, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (finding Religious Freedom Restoration Act unconstitutional, thus reinstating *Smith* as the proper standard).

However, during oral argument, defendants' counsel represented that the City interprets vending to encompass the display of goods. *See also Bery,* 97 F.3d at 691, 697 (reading General Vendors Law to bar selling *or displaying* artwork without general vendor's license). In *Bery,* the City argued that the artists were free to display their wares, as long as they did not sell them. The Court need not rule on the scope of the General Vendors Law because plaintiffs were clearly engaged in selling activity.

In *Smith*, the Supreme Court held that "an individual's religious beliefs [cannot] excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*, 494 U.S. at 878–79, 110 S.Ct. at 1600; *See also United States v. Lee*, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058–59 n. 3, 71 L.Ed.2d 127 (1982) (Stevens, J. concurring in judgment) (free exercise right is not offended by "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [an individual's] religion prescribes (or proscribes)"). While the First Amendment prohibits government regulation of religious belief, laws may interfere with religious practice incidentally as long as the object of the law is not prohibiting or burdening the exercise of religion. *Smith*, 494 U.S. at 877–79, 110 S.Ct. at 1599–1600; *City of Boerne*, —— U.S. at ——, 117 S.Ct. at 2161 ("*Smith* held that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest.").[4]

■ Plaintiffs contend that the perfume oils and incense that they were selling are important to the practice of Islam.[5] Defendants submit an expert's affidavit and devote many pages to argue that these goods are not required for Muslim prayer, but are at most merely "recommended" by Islamic law. While there is a factual dispute as to the status of these objects in Islamic tradition and liturgy, this issue is not a material fact for purposes of deciding the instant motion. The Court accepts plaintiffs' assertion that the fragrant oils and incense have religious significance, whether their use is technically "required" by Islamic law or not. It is impermissible for the Court to evaluate the centrality of a religious practice or belief to a person's religion. *Smith*, 494 U.S. at 887, 110 S.Ct. at 1604 ("warn[ing] that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim"); *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) ("[I]t is not within the judicial function to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith.").

The General Vendors Law's licensing requirement and the general vending ban in restricted areas are unquestionably valid, neutral laws of general applicability. *See ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 953 (D.C.Cir.1995) (solicitation and sales restrictions are "valid and neutral regulations of general applicability"); *Story v. Green*, 978 F.2d 60, 64 (2d Cir.1992) ("A local government has a legitimate interest in preserving the appearance of its streets ...."). Their application to plaintiffs' vending activity arguably impinges on their religious practice. As such, the vending regulations fall squarely within the holding of *Smith*, and raise no free exercise claim. *See ISKCON*, 61 F.3d at 953 (under *Smith*, Free Exercise Clause does not protect religious group's sale of religious beads and audio tapes from valid, neutral laws of general applicability); *Intercommunity Center for Justice and Peace v. I.N.S.*, 910 F.2d 42, 44 (2d Cir.1990) (upholding, under *Smith*, INS regulation requiring employers to verify legal status of employees even though it "compel[led] action contrary to certain religious beliefs").

---

**4.** The *Smith* Court cautioned, however, that a neutral law of general applicability may run afoul of the First Amendment in a "hybrid" case, one involving not only free exercise concerns, but other constitutional protections as well, such as freedom of speech. 494 U.S. at 881, 110 S.Ct. at 1601; *Intercommunity Center for Justice and Peace v. I.N.S.*, 910 F.2d 42, 44 (2d Cir.1990) (noting that strict scrutiny applies to "hybrid" cases). For example, *Murdock v. Pennsylvania*, 319 U.S. 105, 112, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943), invalidated a flat tax on solicitations as applied to the dissemination of religious ideas, and the Supreme Court explicitly referenced both freedom of religion and freedom of speech and the press. The Court concludes that this case does not involve a hybrid claim because plaintiffs' vending activity does not implicate freedom of speech. *See infra* Section C.

**5.** Plaintiffs admit that the bracelets have no religious significance. Al–Amin Depo. at 42; Sayeed Depo. at 23; Smalls Depo. at 32. During oral argument, plaintiffs' counsel conceded that the application of the vending regulations to the sale of bracelets is not being challenged in this lawsuit.

## C. *Freedom of Speech*

Defendants also move for summary judgment on those of plaintiffs' claims that allege a violation of the First Amendment right to free speech and seek a declaration that the General Vendors Law is unconstitutional on freedom of speech grounds. Plaintiffs argue that the primary purpose of their activity is communicative, and it is therefore protected by the First Amendment.

The threshold question is whether the sale, or as plaintiffs characterize it—dissemination by sale or donation—, of perfume oils and incense is protected expressive activity under the Free Speech Clause of the First Amendment. "[W]hether particular conduct possesses sufficient communicative elements to bring the First Amendment into play" depends on "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974) (quoted in *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989)). Under this standard, activities such as flag-burning, *Texas*, 491 U.S. at 405–06, 109 S.Ct. at 2540, wearing an armband to protest the Vietnam War, *Tinker v. Des Moines Independent Community Sch. Dist.*, 393 U.S. 503, 505, 89 S.Ct. 733, 735–36, 21 L.Ed.2d 731 (1969), and a sit-in to protest segregation, *Brown v. Louisiana*, 383 U.S. 131, 141–42, 86 S.Ct. 719, 723–24, 15 L.Ed.2d 637 (1966), have been recognized as expressive behavior that warrants First Amendment protection. The fundamental characteristic of these cases is that "the conduct and the expression were inextricably joined." *Young v. New York City Transit Authority*, 903 F.2d 146, 153 (2d Cir.) (First Amendment implicated if regulated, activity is "inseparably intertwined with a 'particularized message'"), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

The sale of goods, under certain circumstances, may constitute expressive activity, triggering First Amendment protection. *See Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 796, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988) ("we do not believe that the speech retains its commercial character when it is inextricably intertwined with otherwise fully protected speech"); *Murdock v. Pennsylvania*, 319 U.S. 105, 112, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943) (Jehova's Witness' door-to-door selling activities were "merely incidental and collateral" to their main object of preaching, and therefore were protected by the First Amendment) (citation omitted); *Gaudiya Vaishnava Soc. v. City and County of San Francisco*, 952 F.2d 1059, 1064 (9th Cir.1990) (sale of goods inextricably intertwined with speech because environmental groups "sell their merchandise in conjunction with other activities in order to disseminate their organizations' message"), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). In *Gaudiya*, the written messages advocating the groups' cause were affixed to the goods, and the selling occurred while the plaintiffs were "distributing their literature [and] engaging in persuasive speech." 952 F.2d at 1064. Selling message-bearing T-shirts by nonprofit groups has been held to constitute expressive activity. *Friends of the Vietnam Veterans Memorial v. Kennedy*, 116 F.3d 495, 497 & n. 2 (D.C.Cir.1997); *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir.) (relying on *Gaudiya*), *cert. denied*, —— U.S. ——, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996).

*Gaudiya* relied on case law that accords First Amendment protection to fund-raising for charitable organizations. *See, e.g., Bd. of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The *Schaumburg* Court recognized that distinguishing between "purely commercial ventures and protected distribution of written materials [is] a difficult task." 444 U.S. at 630, 100 S.Ct. at 833. The Supreme Court reasoned that charitable solicitation by organized groups is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues." *Id.* at 632, 100 S.Ct. at 834.

While plaintiffs' selling activity appears superficially similar to the sale of message-bearing goods and T-shirts, the Court concludes that offering perfume oils and incense "in exchange for donations" is not an expressive activity that is "inextricably intertwined" with conveying a message about Islam. This case is distinguishable from *Gaudiya* and the T-shirt cases because the goods themselves do not bear a message, nor does their sale convey a particularized message that would likely be understood by the purchasers. While plaintiffs claim that they were simultaneously involved in disseminating written matter about Islam and propagating the message of Islam by engaging pedestrians in discussion, these perfectly permissible missionary activities are not "intextricably joined" to the sale of oils and incense. The act of selling oils and incense simply is not sufficiently intertwined with the expression that plaintiffs are free to engage in, such as discussing the role of these products in Islam and instructing passers-by in their use. The Court finds persuasive the analysis of then-Circuit Judge Ginsburg in *ISKCON*, where she reasoned that Krishna beads that "serve[ ] as an instrument of prayer and meditation ... may be an aid to spiritual activity, but they are not in themselves communicative." 61 F.3d at 961 (Ginsburg, J., concurring in part and dissenting in part). Therefore, their sale is not entitled to First Amendment protection. Moreover, even if the beads communicate a message, "their sale does not add anything to ISKCON's ability to communicate its ideas to passers-by...." *Id.* The same is true of plaintiffs' vending of fragrant oils and incense.

Plaintiffs also argue that their ability to raise funds by selling these goods is what enabled them to continue their proselytizing work. But the charitable solicitation cases are of no avail to plaintiffs. First, plaintiffs have made no allegation that they are engaged in fund-raising activity along the lines recognized in those cases. Plaintiffs' vending constituted a major, if not exclusive, source of their livelihood. *See* Al–Amin Depo. at 43, 45, 54; Sayeed Depo. at 20, 31; Smalls Depo. at 12–13, 16–17. While plaintiffs stated that they occasionally made donations to various

mosques, they were not soliciting donations on behalf of these mosques or any organized charity. *See* Al–Amin Depo. at 52–53; Sayeed Depo. at 26, 33–34; Smalls Depo. at 16. Allocating a portion of one's earnings toward charitable contributions does not render the income-producing activity "charitable fund-raising." Second, and more importantly, the reason charitable solicitation is protected activity is "not because the First Amendment contemplates the right to raise money, but rather because the act of solicitation contains a communicative element." *Friends of the Vietnam Veterans*, 116 F.3d at 497. The sale of oils and incense lacks that communicative element.

Plaintiffs primarily rely on *Bery v. City of New York*, 97 F.3d 689 (2d Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997), which invalidated the licensing requirement of the General Vendors Law as applied to visual artists selling their work in public spaces. Their reliance is misplaced. In that case, the Second Circuit found that visual artwork is expression, capable of depicting and communicating "ideas, concepts and emotions" like the written word, albeit in a different form, and is therefore entitled to full First Amendment protection. *Id.* at 695. This determination led the court to the well-established principle that "[t]he sale of protected materials is also protected." *Id.* at 695–96 (citing *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756 n. 5, 768, 108 S.Ct. 2138, 2143 n. 5, 100 L.Ed.2d 771 (1988)). Plaintiffs' attempt to analogize their activity to the circumstances in *Bery* is flawed because vials of perfume oil and sticks of incense lack an inherently communicative element, and consequently, their sale or exchange for donations also is not expressive activity. *Cf. ISKCON*, 61 F.3d at 954 (where court did not decide whether Krishna beads are "sufficiently expressive to merit First Amendment protection").

*Bery* found that the licensing requirement could not withstand scrutiny as a content-neutral time, place and manner regulation because it functioned as "a de facto bar preventing visual artists from exhibiting and selling their art in public areas in New York" since general vendor's licenses are virtually

impossible to obtain. 97 F.3d at 697. However, the court contrasted the license scheme with the permissible regulations that ban general vending in certain congested areas. *Id.* at 697–98. Significantly, *Bery* emphasized that "[t]he City may enforce narrowly designed restrictions as to where appellants may exhibit their works in order to keep the sidewalks free of congestion and to ensure free and safe public passage on the streets." *Id.* at 697. *Bery* explicitly recognized the valid exercise of state police power to effect "crowd management and control, or to prevent congestion or to keep the streets clear to allow unimpeded passage of the public over the City's thoroughfares" by means of time, place and manner regulations, such as those embodied in Admin. Code § 20–465. *Id.* at 698. Even intrinsically expressive activity can be restricted in "particular areas of the City where public congestion might create physical hazards and public chaos." *Id.* at 697–98. At issue in this case is a commercial zone where general vending is prohibited even with a general vendor's license—precisely the type of content-neutral time, place and manner regulation approved of by *Bery*.[6] *See Baker v. Peddlers Task Force*, 1996 WL 741616, at *1–2 (S.D.N.Y. Dec.30, 1996) (*Bery* prohibits application of licensing requirement to photographers, but total vending ban in certain areas applies).

The instant case does not directly involve the licensing requirement. Plaintiffs argue, however, that they are effectively barred from peddling their oils and incense anywhere in New York City because their prospects of obtaining a vendor's license are nil. But the reason *Bery* invalidated the licensing requirement as applied to visual artists is because the court found visual art to be

protected by the First Amendment. That is not the case with oils, incense or bracelets.

For the reasons stated above, defendants' motion for partial summary judgment is granted as to plaintiffs' First Amendment claims.

SO ORDERED.

---

6. Because the Court finds that the sale of the goods in question is not sufficiently expressive to warrant First Amendment protection, the Court does not engage in the constitutional analysis that is applied to time, place and manner regulations. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (content-neutral restrictions must be "narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the [regulated] information"). Other courts have upheld the application of area vending bans to expres-

sive activity as permissible time, place and manner restrictions. *See Friends of the Vietnam Veterans*, 116 F.3d at 496 (relying on *ISKCON* to uphold area ban on T-shirt sales as time, place and manner regulation); *One World*, 76 F.3d at 1012–14 (upholding ban on street vending as applied to message-bearing T-shirts under three-pronged standard governing time, place and manner regulations); *ISKCON*, 61 F.3d at 956–58 (upholding sales ban applied to Krishna audio tapes and beads as time, place and manner regulation).