Opinion
LEE, J.
On April 2, 2000, appellant was cited by Santa Monica Police Officer Michael Solis for violation of Santa Monica Municipal Code section 6.36.040, subdivision (a),[1] vending in the City of Santa Monica without first obtaining and possessing a vendor permit issued by the Chief of the Santa Monica Police Department. Appellant was subsequently charged with the same violation in a misdemeanor complaint filed on April 27, 2000. On June 13, 2000, respondent filed an amended complaint charging appellant with the same offense, but this time as an infraction.
Trial began on July 12, 2000.[2] The citing officer testified on behalf of respondent, and appellant testified on his own behalf. At the expiration of testimony, the court continued trial until August 17, 2000, for further briefing and argument by the parties on the issue of whether the section in question was unconstitutional and in violation of appellant’s United States *Supp. 10 Constitution First Amendment rights. On August 17, 2000, after hearing additional argument, the court found the ordinance constitutional and appellant guilty of the charged offense. Appellant was sentenced to 10 hours of community service. Appellant filed a timely notice of appeal on September 15, 2000.
At trial, Michael Solis, a police officer with the Santa Monica Police Department, testified that about 2:30 p.m. on April 2, 2000, he was on bike patrol in the 1300 block of Third Street Promenade. He observed appellant outside a Starbucks coffee shop. Appellant had placed about 30 canisters, each containing several sticks of incense, labeled by scent or aroma, such as cherry or vanilla, on a table. According to Officer Solis, appellant was at “his usual spot” where he was “pretty regularly on the weekends.” Next to the table was a light pole, on which a sign was affixed bearing the word “Inscents,” a play on words for incense. Also on the sign were the words “For Donation,” or words to that effect. Furthermore, the sign contained language to the effect that “If You Have More Money, You Give More. The Poor Give Less.”
When Officer Solis informed appellant that he was going to cite him for vending without a permit, appellant responded that he was a religious organization, his church was legitimate, incense was a very important part of his religious beliefs, and he had a constitutional right to sell incense. Undeterred, Officer Solis cited appellant for a violation of section 6.36.040, subdivision (a). While completing the citation, the officer observed several people approach the table and talk with appellant. The people asked how much the incense cost, and appellant answered that it was whatever they could afford.
Appellant testified at trial. He stated that he did not have a vending license, but he did not need to have one. Appellant’s theory was that as a member of the First Church of Rasta, Incorporated (hereafter the Church), he was not required under the municipal code to obtain a business license, which meant that he did not have to obtain a vending license. The court responded that a business license and a vending license were two different things, and the issue before the court was whether appellant, since he admitted he did not have a vending license, fell into one of the exemptions in the code to the vending license requirement. (§ 6.36.030.) Appellant asserted that he fell under the exception for organizations vending newspapers, leaflets,, and pamphlets. The court commented he was not charged with vending these items, but rather incense.
At trial, appellant held up a piece of paper that appeared to be a list of organizations recognized by respondent as nonprofit organizations that did not require a business license, as well as several court opinions that appellant *Supp. 11 claimed supported his arguments in the case. When the court commented it did not have the Los Angeles ordinance that was the subject of one of appellant’s federal cases, respondent asked for time to respond to the authority offered by appellant. The court continued the trial until August 17, 2000, to allow consideration of appellant’s argument that the Santa Monica ordinance was unconstitutional. The court ordered appellant to give respondent, within 10 days, a list of the legal authority he was relying on, and provided that respondent could file a supplemental brief, not later than one week before August 17, 2000, on the constitutional issues. On July 28, 2000, well before the deadline, respondent filed with the court and served on appellant its supplemental brief, along with copies of federal opinions referenced therein.
At the continued proceeding on August 17, 2000, respondent asserted the ordinance made a constitutionally permissible distinction, not on types of organizations or their ideological, communicative, or expressive messages, but rather on things or products, such as newspapers, jewelry, housewares, and the like. Items that were inherently communicative, such as newspapers and pamphlets, and had nominal value apart from the communication, could be sold without a vending license, while items such as jewelry or incense, which did not have these characteristics, could not. Appellant responded that his sale of, or solicitation of donations in exchange for, incense, or anything else for that matter, was protected under the freedom of religion clause of the First Amendment, as long as he believed the item was somehow related to his religion.
In response to appellant’s contention that all encyclopedias stated that incense was a religious item, the court responded that “[ijt’s not communicative. That’s your problem.” Appellant countered that incense was communicative, since, “you bum incense, and they [sz'c] go to the heavens. And you make the prayer to the gods.” The court rejected appellant’s arguments, finding the ordinance constitutional and appellant guilty of the charged infraction.
Appellant makes the following argument on appeal: (1) he had been found not guilty of the same type of offense many times in the past, and such charges against him had also previously been dismissed in other courts; (2) his constitutional rights were denied, in that the “[sjtatement of rights for misdeamer [sz'c] denied” and “[n]o speedy trial, jury trial, lawyer or to present evidence, [sz'c] [a]nd finish case argument”; (3) “[jjudge ignores appellate [sz'c] constitutional rights of freedom of religion and speech and press”; (4) “[jjudge orders appellate [sz'c] to furnish list of all federal authorities for city attorney to respond, but states that city attorney need not respond to all that were furnished”; (5) “appellate [sz'c] found guilty altho [sz'c] city attorney stated appellate [sz'c] fell under city law exceptions and *Supp. 12 exemptions. Judge refused to see evidence because ‘it is not relevant’ and (6) the judge admitted there were exemptions to the ordinance, but he improperly separated “ ‘incense’ from religion, and ‘religious’ organizations from individuals and organizations, as stated in the law.”
As regards appellant’s first contention, that he previously had been found not guilty of the same type of offense and similar charges had been dismissed, appellant fails to cite any legal authority for his apparent argument that an acquittal or dismissal of the same or similar charges in prior cases precludes prosecution in a new case involving new facts. Since appellant cites no authority for his legal theory, this contention is deemed without foundation and requires no discussion. (People v. Ham (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906], disapproved on other grounds in People v. Compton (1971) 6 Cal.3d 55, 60, fn.3 [98 Cal.Rptr. 217, 490 P.2d 537].) A failure to cite any relevant authority in support of an assertion results in a waiver of the right to appellate review of that assertion. (People v. Stanley (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; People v. Diaz (1983) 140 Cal.App.3d 813, 824 [189 Cal.Rptr. 784].) In any event, as the trial court correctly noted, other charges and their outcomes were completely irrelevant to the issue of whether appellant was guilty of the offense charged in this particular case.
Appellant’s second contention is that his constitutional rights were denied, in that the “[statement of rights for misdeamer [szc] denied,” and “[n]o speedy trial, jury trial, lawyer or to present evidence, [szc] [a]nd finish case argument.” He also asserts that the trial court improperly refused to allow him to show a videotape of Hare Krishna activity. These arguments, however, are subject to the same infirmity noted above, namely, they lack citation to legal authority and are deemed without foundation and waived.
In any event, appellant was tried for a violation of Santa Monica Municipal Code section 6.36.040 as an infraction, not a misdemeanor. As provided in Penal Code section 19.6, an infraction is not punishable by imprisonment, and a person charged with an infraction “shall not be entitled to a trial by jury” and “shall not be entitled to have the public defender or other counsel appointed at public expense . . . .” (See People v. Oppenheimer (1974) 42 Cal.App.3d Supp. 4, 12 [116 Cal.Rptr. 795].) Also, the docket reflects that appellant was advised of his constitutional rights and properly provided with counsel on May 2, 2000, when the matter was filed as a misdemeanor, and that appointed counsel was just as properly relieved on June 13, 2000, when an amended complaint charging the matter as an infraction was filed. The docket also reflects that appellant, at every relevant point, waived statutory time.
As to appellant’s argument that he was not provided ample time to present evidence and to argue his case, the record is to the contrary. Assertions in a *Supp. 13 brief that are unsupported by the record cannot be considered by this court. (People v. Merriam (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161], disapproved on another point in People v. Rincon-Pineda (1975) 14 Cal.3d 864, 882 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].) Appellant’s contention that he was not permitted to show a videotape of Hare Krishna activity is also deficient. The record shows that he never asked the court for such permission. In any event, if he had, the request should have been denied on the grounds of relevance.
Appellant’s fourth point is that the “[j]udge orders appellate [sz'c] to furnish list of all federal authorities for city attorney to respond, but states that city attorney need not respond to all that were furnished.” This contention is factually correct, but misleading and irrelevant. The transcript of proceedings on July 12, 2000, reflects that appellant was holding up a sheet of paper, which was apparently one page of a list of nonprofit organizations prepared by respondent, as well as several court opinions that appellant claimed supported his arguments. When the court indicated it did not have a copy of the ordinance cited in one of appellant’s referenced cases, respondent asked to file a supplemental brief. The court then reasonably ordered appellant to give respondent, within 10 days, a list of all the authorities he was relying upon. Further proceedings were set for August 17, 2000, and respondent was permitted to file a supplemental brief not later than one week before the hearing. On July 28, 2000, almost three weeks before August 17, 2000, respondent filed and served its supplemental brief, as well as a companion filing that contained copies of the federal opinions cited in its brief.
At the hearing on August 17, 2000, in response to appellant’s statement that respondent had not responded to all his cited authority, the court stated that respondent was not required to do so. Thus, it was on July 12, 2000, that the court ordered respondent to provide authorities, and on August 17, 2000, when it stated that respondent did not have to address every one. Appellant’s implication that the court made the two statements at the same time is misleading. In any event, respondent was not required to address every citation provided by appellant, either because it considered such citations irrelevant or for any other reason.
Appellant’s fifth contention, that he was found guilty, even though “city attorney stated appellate [sz'c] fell under city law exceptions and exemptions,” is contrary to the record. Respondent never made such a concession and, in fact, on numerous occasions stated the exact opposite, that appellant did not fall into any exemptions to the vending license requirement. As regards the claim that the judge refused to permit “relevant” evidence, we find that the court properly sustained respondent’s relevance objections and otherwise properly excluded irrelevant evidence.
*Supp. 14 Appellant’s remaining contentions deal with the applicability of the ordinance to his situation and the court’s allegedly erroneous determination that the ordinance was constitutional. Specifically, appellant’s third contention is that the “[jjudge ignores appellate [sic] constitutional rights of freedom of religion and speech and press”; his sixth contention is that the judge admitted there were exemptions to the ordinance, but he improperly separated “ ‘incense’ from religion, and ‘religious’ organizations from individuals and organizations, as stated in the law.” As reflected below, however, we find that these arguments are without merit.
Section 6.36.040, subdivision (a), provides in relevant part that no person may vend in the city without first obtaining a license.[3] Section 6.36.020, subdivision (b), defines “goods or merchandise” as “[a]ny items that are not a food product.” Section 6.36.020, subdivision (c), which defines “vend or vending,” also includes requests for donations as vending, namely, “[r]e-quests for donations in exchange for merchandise also constitute vending.”[4] Exemptions to the vending license requirements are set forth in section 6.36.030, which exempts, among others, individuals “vending newspapers, *Supp. 15 leaflets, pamphlets, bumper stickers or buttons,” and any “individual or organization that vends the following items which have been created, written, composed or otherwise produced by the vendor: books, cassette tapes, compact discs, paintings, photographs or any other item that is inherently communicative and has nominal utility apart from its communication.” (§ 6.36.030, subds. (g) & (h).)[5]
Appellant’s legal theory, in summary, appears to be as follows: (1) the Church is a religious nonprofit organization; (2) he is a member of the Church; (3) since the Church is a nonprofit organization recognized by respondent to be exempt from a business license requirement, it is not required, and neither are its members, to have vending licenses; (4) even if the Church, and/or appellant, were required to have a vending license, they are exempted under section 6.36.030, subdivision (h), because the incense offered in exchange for donations was “inherently communicative and has nominal utility apart from its communication”; and (5) in any event, the ordinance is unconstitutional, in that any religious organization may sell anything without obtaining a vending license, by asserting that the item, be it books, incense, pots or pans, is in some way connected to its religion.
As a preliminary matter, it must be noted that appellant introduced no evidence at trial that the Church is a nonprofit organization exempt from the requirement to have a business license. This would have been an evidentiary condition precedent to his argument that such an exemption concurrently exempted him from the vendor license requirement. Even if he had introduced such evidence, however, section 6.04.190 exempts nonprofit organizations from the business license requirement only; the language does not mention vending, much less provide a concurrent exemption from the requirement for a vending license if it is otherwise mandated.[6]
Appellant contends that, contrary to the court’s finding, the incense he offered to the public was “inherently communicative,” on the theory that *Supp. 16 “you bum incense, and they [szc] go to the heavens. And you make the prayer to the gods.” This argument is not persuasive. First, there was nothing about appellant’s manner of offering incense to the public in exchange for donations to tie incense to any principles or message of his Church. The same argument could have been made by appellant if he had been selling Marlboro cigarettes. The trial court properly rejected this explanation by appellant to justify his sale of this commercial product to the public.
Case authority, as well as common sense, compels the conclusion that under the facts of this case, there is nothing about the sale of incense that ties it “inextricably” with a religious or other message. In Al-Amin v. City of New York (E.D.N.Y. 1997) 979 F.Supp. 168, the plaintiffs were four African-American Muslims who were arrested and issued summons for unlawful vending. They sued the city pursuant to 42 United States Code section 1983 for violation of their constitutional rights, and under state law for racial and religious discrimination. Their complaint sought damages for false arrest and imprisonment, as well as a declaration that the vending laws violated their constitutional rights to free exercise of religion and free speech.
The facts revealed that the plaintiffs had stationed themselves in a mall area in downtown Brooklyn and solicited donations on behalf of their “faith” in exchange for, among other things, perfume oils, bracelets, and incense. The city filed a motion for summary judgment to dismiss the plaintiffs’ claim that the vending laws violated their right to free exercise of religion and free speech.
The court granted the city’s motion. As regards the free exercise of religion argument, it noted, “ ‘an individual’s religious beliefs [cannot] excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate.’ ” (Al-Amin v. City of New York, supra, 979 F.Supp. at p. 171, quoting from Employment Div., Ore. Dept. of Human Res. v. Smith (1990) 494 U.S. 872, 878-879 [110 S.Ct. 1595, 1600, 108 *Supp. 17 L.Ed.2d 876].)[7] The court was aware of a factual controversy, namely, that plaintiffs contended that perfume, oils, and incense were important to the practice of Islam, while the city offered an expert declaration that opined such items were only recommended by Islamic law. The court stated, however, that resolution of this factual question was not relevant, since it accepted plaintiffs’ position that the items had religious significance. Nonetheless, the court held that under Smith, the sale of these items did not raise a free exercise of religion claim.
As regards the freedom of speech question, the plaintiffs contended that the primary purpose of the solicitation of money in exchange for perfume, oils, and incense was communicative and protected by the First Amendment. The court noted the issue was whether the plaintiffs’ activities constituted expressive activity under the free speech clause of the First Amendment, namely, whether the particular conduct at issue possessed communicative elements sufficient to bring the First Amendment into play. This depended on whether “[a]n intent to convey a particularized message was present, and in the surrounding circumstances [whether] the likelihood was great that the message would be understood by those who viewed it.” (Spence v. Washington (1974) 418 U.S. 405, 410-411 [94 S.Ct. 2727, 2730, 41 L.Ed.2d 842].)
The court noted that the fundamental characteristic of these cases is that “ ‘the conduct and the expression were inextricably joined.’ ” (Al-Amin v. City of New York, supra, 979 F.Supp. at p. 172, quoting from Young v. New York City Transit Authority (2d Cir. 1990) 903 F.2d 146,153, cert. den. (1990) 498 U.S. 984 [111 S.Ct. 516, 112 L.Ed.2d 528].) Examples of such expressive activity include flag-burning, wearing armbands to protest the Vietnam War, and sit-ins to protest segregation. {Al-Amin, at p. 172.) The sale of goods, under certain circumstances, can constitute expressive activity. Examples include door-to-door selling activities by Jehovah’s Witnesses, sale of goods by environmental groups, and the sale of message-bearing T-shirts. (Ibid.)
The court concluded, however, that the plaintiffs’ activities were not an expressive activity “inextricably intertwined” with conveying a message about Islam. “The act of selling oils and incense simply is not sufficiently intertwined with the expression that plaintiffs are free to engage in, such as discussing the roll of these products in Islam and instructing passers-by in their use.” (Al-Amin v. City of New York, supra, 979 F.Supp. at *Supp. 18 p. 173.) Although incense may aid in spiritual activity, it is not, in itself, communicative.
Like the court in Al-Amin, we find that appellant’s activities here do not raise any First Amendment free exercise of religion or freedom of speech protections. The evidence reflects that appellant’s solicitation of money for incense had no religious connotations whatsoever; there were no signs indicating the use of incense in the Church, or why incense played any role in Church doctrine or messages, and appellant made no mention of these concerns to prospective purchasers. The only discussions he had with passersby dealt with how much money they might give him for his incense.
Even if appellant’s solicitation of donations for incense was somehow sufficiently expressive to merit First Amendment protections, the ordinance itself imposes valid time, place, and manner restrictions on such activities. Such restrictions are constitutional if they are (1) content neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of communication. (One World One Family v. City and County of Honolulu (9th Cir. 1996) 76 F.3d 1009, 1012.) In this instance, the restriction is completely content neutral; no group or message is singled out for restriction, rather, only items that have nominal, if any, communicative quality. The ordinance has been narrowly tailored so as, for example, to permit an organization to express its views in many ways, such as orally or by distributing written information containing its message. It is also manifest that a city has a significant interest in protecting itself and its citizens from unrestricted vending which results in crowding and an unpleasant urban environment, as well as unfair competition to licensed vendors. (Id. at p. 1013.)
Finally, it is manifest the ordinance provides for ample alternative channels of communication. For example, rather than try to sell incense, appellant could lawfully hand out publications or inform passersby of the principles of the Church. As noted by respondent’s counsel in argument before the trial court, the ordinance permits persons to sell many items that have a communicative quality, such as a painting or even tattooing, the latter on the theory that the body is the canvas and the tattoo is the art. What one cannot do under the ordinance is sell incense, as appellant attempted, without first obtaining a vending license.
The judgment is affirmed.
Beverly, P. J., and McKay (P.), J., concurred.

 All further references to ordinances or municipal code sections are to the Santa Monica Municipal Code unless otherwise indicated.

 The reporter’s transcript states that the trial began on July 10, 2000. The docket and the minutes of the trial, however, reflect that trial began on July 12, 2000.

 Section 6.36.040 provides that: “(a) No person may vend in the City without first obtaining and having in his or her possession a vendor permit issued by the Chief of Police in accordance with this Chapter, [ft] (b) To receive a vendor permit, a person must complete a vendor permit application on the form approved by the City and file it with the City. The applicant must provide the following information: [ft] (1) Applicant’s full name and address, [ft] (2) Proof of applicant’s identity, [ft] (3) Proof of insurance coverage satisfactory to City, [ft] (4) A brief description of the type of food products or goods to be sold. This shall include the nature, character and quality of the product, [ft] (5) The location where the applicant plans to vend, [ft (6) If applicant is employed by another to vend, the name and business address of the employer, [ft] (7) If applicant will use a motor vehicle during his or her vending, a description of the vehicle, its registration number, its license number and the streets the applicant intends to use. [ft] (8) If applicant will use a pushcart or any other device, a description of the pushcart or device, [ft] (9) If applicant will vend food products, a valid Los Angeles County Department of Health permit and certification that he or she complies with all State and Federal laws regarding food product vending, [ft] (c) No application for a vendor permit or the renewal thereof shall be accepted unless the application is accompanied by a fee of twenty-five dollars, [ft] (d) A permit pursuant to Section 6.14.020 shall not be required if a vendor permit is issued pursuant to this Chapter.”

 The entirety of section 6.36.020 reads as follows: “For purposes of this Chapter, the following words or phrases shall have the following meanings: [ft (a) Food or Food Products. Any type of edible substance or beverage, [ft] (b) Goods or Merchandise. Any items that are not a food product, [ft] (c) Vend or Vending. To sell, offer for sale, expose for sale, solicit offers to purchase, or to barter food, goods, merchandise, or services in any public area from a stand, pushcart motor vehicle, or by a person with or without the use of any other device or other method of transportation. To require someone to pay a fee or to set, negotiate, or establish a fee before providing goods or services constitutes vending. Requests for donations in exchange for merchandise also constitute vending, [ft] (d) Vendor. A person who vends. This includes a vendor who is an employee or agent of another. A person engaged in the business of soliciting, canvassing, or taking orders subject to the regulations in Chapter 6.24 is not a ‘vendor.’ [ft] (e) Pushcart. Any nonmotorized mobile device used in the sale, barter, or offer for sale of food products, goods, or merchandise or services, [ft] (f) Vehicle. *Supp. 15 Any motorized device used in the sale, barter, or offer for sale of food products, goods or merchandise or services.” (Original boldface.)

 The entirety of section 6.36.030 reads as follows: “The provisions of this Chapter shall not apply to: HD (a) Any approved participant in any farmer’s market. HD (b) Any approved participant in any cultural arts and crafts show (pursuant to Chapter 6.44). HD (c) Any vendor operating pursuant to or under the authority of an approved license agreement on the Pier, HO (d) Any vendor operating pursuant to or under the authority of an approved license agreement on the pedestrian mall established pursuant to Section 3.36.150 of this Code. HI] (e) Any vendor operating pursuant to Section 3.36.180 of this Code. HD (f) Any approved participant in any special event authorized by the City. HD (g) Any individual vending newspapers, leaflets, pamphlets, bumper stickers or buttons. HD (h) Any individual or organization that vends the following items which have been created, written, composed or otherwise produced by the vendor: books, cassette tapes compact discs, paintings, photographs or any other item that is inherently communicative and has nominal utility apart from its communication.”

 Section 6.04.190 provides in its entirety that: “(a) Exemption. The provisions of this Chapter shall not require the payment of a license to carry on any business, or require the payment of any license, from any nonprofit corporation or organization which is carried on *Supp. 16 wholly for the benefit of nonprofit purposes and from which profit is not derived, either directly or indirectly by any person. No license shall be required for the conducting of any entertainment, concert, exhibition, or lecture on scientific, historical, literary, religious, political, or moral subjects whenever the receipts of any such entertainment, concert, exhibition or lecture are to be appropriated entirely to any nonprofit purpose, [f] (b) Definition of Nonprofit Corporation or Organization. For purposes of this Section, a nonprofit organization is defined as one which is organized not for profit but for the promotion of the welfare of others. A nonprofit corporation is defined as any nonprofit corporation organized under California law for charitable purposes. A nonprofit organization or corporation is one which is exempt from paying Federal income tax by virtue of its nonprofit status. [1[] (c) Evidence of Nonprofit Status. Upon request of the Director of Finance, a corporation or organization claiming exemption from the business license fee based upon its nonprofit status shall submit documentation satisfactory to City, evidencing the nonprofit status of the applicant organization or corporation.” (Original boldface.)

 The Al-Amin court noted that special attention had to be given to hybrid cases, namely, cases that involved, beyond free exercise concerns, other constitutional protections, such as freedom of speech and freedom of press. (Al-Amin v. City of New York, supra, 979 F.Supp. at p. 171, fn. 4.) Although appellant’s case does raise, at least preliminarily, freedom of speech issues, it has nothing whatsoever to do with another ground asserted by appellant in his brief, namely, freedom of the press.