FRIENDS OF THE VIETNAM
VETERANS MEMORIAL,
et al., Appellees,

v.

Roger G. KENNEDY, Director, National
Park Service, et al., Appellants.

No. 95–5393.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 11, 1997.

Decided June 6, 1997.

Marina Utgoff–Braswell, Assistant United States Attorney, Washington, DC, argued the cause for appellants, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the briefs.

David M. Liberman, Los Angeles, CA, argued the cause for appellees, with whom Alexander P. Humphrey, McLean, VA, was on the brief.

Arthur B. Spitzer, Washington, DC, was on the brief for amicus curiae American Civil Liberties Union of the National Capital Area.

Before SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The National Park Service prohibits the sale of a number of items, among them t-shirts, on the National Mall. Friends of the Vietnam Veterans Memorial challenged that prohibition as a violation of the First Amendment and prevailed in the district court. We reverse.

I.

The Mall is an approximately two-mile long strip of national parkland situated in the midst of Washington, D.C. It is the site of monuments marking great figures and events in our nation's history. At the west end sits the Lincoln Memorial, flanked to the north

by the Vietnam Veterans Memorial and to the south by the Korean War Veterans Memorial. The towering Washington Monument stands in the middle of the Mall, the museums of the Smithsonian run along either side, and the United States Capitol forms the eastern border. Still the Mall is more than home to these enduring symbols of our nationhood. Its grassy expanse provides areas for any number of recreational activities, and its location in the heart of the nation's capital makes it a prime location for demonstrations. It is here where Martin Luther King, Jr., delivered his famous "I Have a Dream" speech, where both sides of the abortion debate have staged passionate demonstrations, and where on any given day one may witness people gathering to voice their public concerns. As we have said before, "It is here that the constitutional rights of speech and peaceful assembly find their fullest expression." *ISKCON of Potomac, Inc. v. Kennedy,* 61 F.3d 949, 952 (D.C.Cir.1995).

But Congress has charged the National Park Service with regulating the use of the Mall so as to "conform" such use "to the fundamental purpose" of "conserv[ing] the scenery and the natural and historic objects . . . and . . . provid[ing] for the enjoyment of the same in such manner . . . as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1 (1994). To this end, the Park Service has promulgated regulations providing that "[d]emonstrations and special events may be held only pursuant to a permit issued" by the Park Service. Although the Park Service has generally prohibited sales on federal parkland in the D.C. area without a (rarely issued) permit, it did in 1976 promulgate a regulation allowing the sale or distribution of "newspapers, leaflets and pamphlets" *in the context* of special events and demonstrations. Over time, the Park Service issued enforcement guidelines extending "newspapers, leaflets and pamphlets" to include t-shirts, bumper stickers, buttons, and posters, so long as the sale of those items conveyed a message "directly related" to the special event or demonstration. In 1995, however, concerned chiefly with an increasing atmosphere of commercialism on the Mall, the Park Service rescinded its enforcement guidelines and promulgated a regulation limiting sales on federal parkland in the D.C. area to "books, newspapers, leaflets, pamphlets, buttons and bumper stickers." 36 C.F.R. § 7.96(k)(1), (2) (1996).

Friends of the Vietnam Veterans Memorial (Friends), along with six other nonprofit organizations [1] that "seek to educate the general public about their respective beliefs and activities," sought declaratory and injunctive relief in the district court on the ground that the new regulation, as applied to prohibit the sale of message-bearing t-shirts on the Mall, violated the First Amendment. The district court agreed and enjoined the regulation.

## II.

■ The government contends that the district judge's order is palpably in conflict with our recent opinion in *ISKCON.* We agree. There, we reviewed the constitutionality of this very same regulation insofar as it prohibited in-person solicitations, the sale of audiotapes, and the sale of religious beads on the Mall. We determined that the regulation was content-neutral and would thus be upheld as long it was " 'narrowly [tailored] to serve a significant governmental interest' " and " 'le[ft] open ample alternative channels for communication' of the message." 61 F.3d at 955 (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)); *see also White House Vigil for the ERA Comm. v. Clark,* 746 F.2d 1518, 1527 (D.C.Cir.1984). Although the solicitation ban did not pass muster—we could not see how allowing "individuals or groups participating in an authorized demonstration . . . to solicit donations within the confines of a restricted permit area" would "add to whatever adverse impact [would] result" from the demonstration itself, 61 F.3d at 956—we upheld the proscription on the *sale* of beads and audiotapes. We rejected the argument that the regulation was fatally underinclusive because it prohibited the sale of beads and audiotapes

while permitting the sale of, for example, books and bumper stickers. We did not think that underinclusiveness "ha[d] the effect of favoring a particular view" or "diminish[ed] the credibility of the Park Service's rationale" for prohibiting the sale of certain items. *See id.* at 956–57; *but see id.* at 960 (Ginsburg, J., concurring in part and dissenting in part). Because the regulation was not "'substantially broader than necessary to achieve the government's interests,'" and because the alternative ways in which the complainants could express their message were "more than adequate," the regulation did not violate the First Amendment. *See id.* at 958 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 800, 109 S.Ct. 2746, 2758–59, 105 L.Ed.2d 661 (1989)).

Friends concede that the government's asserted interests in reducing "discordant and excessive commercialism, as well as degraded aesthetic values," *id.* at 952 (citing 59 Fed. Reg. at 25,857 (1994)), are legitimate. In *ISKCON,* we thought those interests jeopardized by the sale of beads and audiotapes. It is the Park Service's view that the "relatively constant, intrusive and intimidating" t-shirt sales activities were largely responsible for the "pronounced commercialization" of the Mall that the regulation seeks to contain. 60 Fed.Reg. at 17,644 (1995). The Service may certainly take steps to limit the commercialization of the Mall, and the record is replete with evidence that t-shirt sales, even more than the sale of beads and audiotapes, substantially contributed to that phenomenon. We agree with Judge Ginsburg that, if anything, the ban on t-shirt sales is more easily justified than the ban on audiotapes. *See* 61 F.3d at 961 (Ginsburg, J., concurring in part and dissenting in part). If the Park Service's interests were significant in *ISKCON,* then *a fortiori* they are significant here.

Friends argue that t-shirts should nevertheless be distinguished from beads and audiotapes. The district court in this regard characterized the sale of t-shirts as "a unique and especially effective means of communicating the plaintiffs' point of view" because the purchaser aids the seller in spreading the message by *wearing* the t-shirt; the buyer becomes, in the district judge's words, "a human billboard." (Under that reasoning, the sale of billboards would be even more entitled to protection.) But the very billboard characteristics of the t-shirt—its eye-catching nature—make its display for sale and sale on parkland a particularly discordant interruption of the park's tranquility. And that the buyer may wear the t-shirt on parkland or elsewhere does not support appellee's asserted First Amendment right to engage in a sale on park premises.

Of course, there is nothing to stop appellees from giving away their expressive t-shirts on the Mall (or selling them near the Mall). That is unsatisfactory, according to Friends, because it does not promise an adequate source of fundraising. Yet raising money is not a First Amendment concern that the regulation bears upon: The cases protecting the right to solicit contributions in a public forum do so not because the First Amendment contemplates the right to raise money, but rather because the act of solicitation contains a communicative element. *See, e.g., Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980) (charitable solicitation is protected because it is "characteristically intertwined with informative and perhaps persuasive speech"); *Bates v. State Bar of Arizona,* 433 U.S. 350, 363, 97 S.Ct. 2691, 2699–98, 53 L.Ed.2d 810 (1977) (speech is protected "even though it is . . . in the *form* of a solicitation") (emphasis added). We do not deny that the sale of a t-shirt is expressive, but it is only the expression inherent in the transmission of the t-shirt from the seller to the buyer—and not the fact that the seller raises money thereby—which warrants constitutional protection.[2]

---

2. The government relies on *White House Vigil,* 746 F.2d at 1540–41, in which we questioned (in dicta) whether a restriction on placing parcels on a sidewalk during a demonstration warrants any First Amendment concern at all. The government would have us conduct a preliminary inquiry into whether proscribing the sale of an expressive item poses more than a "minimal" burden on expression. That is a curious position in light of the long-established proposition that an expressive item does not lose its protection simply because it is sold. *See, e.g., ISKCON,* 61 F.3d at 953. As the t-shirts in question are message-bearing, the regulation proscribing their sale on

■ Friends' final contention is that the Park Service's blanket ban on t-shirt sales on the Mall should have been more narrowly tailored to allow the sale of t-shirts in areas where the Park Service already tolerates a certain degree of commercialism. In this regard, Friends point out that the Park Service, pursuant to its statutory mandate to provide "services ... necessary and appropriate for public use" and that "are consistent to the highest practicable degree with the preservation and conservation" of the national parks, 16 U.S.C. § 20 (1994), allows the sale of t-shirts (among other paraphernalia) from regulated kiosks. Friends also emphasize that certain areas of the Mall, such as the area in front of the National Air and Space Museum, are virtually overrun with tourists and thus suffer from the effects the Park Service complains of regardless of whether appellants are there selling t-shirts.[3] Although it may be that the Park Service could have limited its regulation to allow the sale oft-shirts in some particular locales, it also may be that the Park Service could have more broadly proscribed the sale of items, message-bearing and otherwise, on the Mall. Our inquiry is directed not at what the Park Service could have done, but rather at what it did, and whether that action furthers significant interests, does not burden substantially more speech than necessary to achieve those interests, and leaves open ample alternative means of communication. This task does not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of parklands is wise and how that level of conservation is to be attained." *Clark*, 468 U.S. at 299, 104 S.Ct. at 3072.[4]

\* \* \*

the Mall, like one proscribing the sale of books or newspapers, raises First Amendment concerns. *Accord One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996).

3. In a related point, Friends rely on *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), to contend that the validity of the regulation is fatally undermined by the activities the Park Ser-

For the reasons stated, we reverse the district court's conclusion that the Park Service's regulation violates the First Amendment.

*So ordered.*

vice allows. But see *ISKCON,* 61 F.3d at 957 (squarely rejecting this argument in evaluating the same regulation).

4. On appeal, amicus American Civil Liberties Union repeatedly asserts that this case presents a "facial challenge" to the regulation. But this assertion is at odds with the complaint below and the argument as joined by the parties on appeal, so we ignore it. *See, e.g., Michel v. Anderson,* 14 F.3d 623, 625 (D.C.Cir.1994).