**FRIENDS OF THE VIETNAM VETERANS MEMORIAL, et al., Plaintiffs,**

**v.**

**Roger G. KENNEDY, et al., Defendants.**

Civil Action Nos. 95–808, 95–850, 95–1081, 95–1240 and 95–1241 (SS).

United States District Court, District of Columbia.

Oct. 29, 1997.

Alexander P. Humphrey, Chevy Chase, MD, David Liberman, Los Angeles, CA, for Friends of the Vietnam Veterans Memorial, Warriors Inc., Last Firebase Archives Project, Americans for Freedom Always, Gaudiya Vaishnava Society, One World One Family Now, Inc. and Open Art, Inc.

Valerie J. Menard, Washington, DC, pro se.

David Ingles Stone, Fairfax, VA, pro se.

Arthur Barry Spitzer, American Civil Liberties Union, Washington, DC, for American Civil Liberties Union of National Capital Area and Presidential Socks Partnership.

Craig A. Johnson, Wiley, Rein & Fielding, Washington, DC, for American Alliance for Rights and Responsibilities.

John Eda, Oxon Hill, MD, pro se.

James Matthew Henderson, Sr., American Center for Law & Justice, Washington, DC, for Augustine David Henderson.

Augustine David Henderson, Annandale, VA, pro se.

James Matthew Henderson, Sr., American Center for Law & Justice, Washington, DC, for Gregory Francis Phillips.

Gregory Francis Phillips, Takoma Park, MD, pro se.

John Pylka, Washington, DC, pro se.

James M. Callender, Jr., Washington, DC and Mark Nathan Troobnick, American Center for Law & Justice, Washington, DC, for David Williams, Wayne Connell, Jose Rodriguez, Eva Dela Suz, Anek Jaipayungton, Thipphawan Jaipayungton, Wilma Accvedo, Merlyn Eda, Reginald Eda, Mely Melchor, Richard Hickok, El Ichalil Setti, Soledad Monteno, Beatriz Delgadillo, Victor Ipanague, Luis Ipanague, Luis Rosar, Rosadina Montoya, Joseph Johnson, Joneth Luisaga, Gonzalo Zavold, Carlos Ganzales, Jhon Cleaphus Alston, Leonor Meigs, Julio Tovar, E. Marlene Leyva, Danne Henderson, Bertha Flores Patilo, Argelico J. Ordonez,Jose Dela Rosa Borohona, Lien Kim Ngo, Billy Piccolo, Kim Sun Kil, Sung Chul Yi, Abdul H. A. Marfadu, safayh A. Mohammed, Alawiya Hamed, Martha Alemayhew, John Way Lowery, Kornelia Nedeva, Dennis A. Mundy, Robert Lowery, Stafford Luwry, Mary Kangethe, David Williams, Jamil Vr Rahman and Narda Chirvechez.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Roger G. Kennedy, Robert G. Stanton, Robert E. Langston and Sandra A. Alley.

### *MEMORANDUM OPINION*

SPORKIN, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss and Defendants' Motion for Reconsideration of Order Granting Motion for Leave to Amend and Supplement Complaint. Plaintiffs are several nonprofit groups selling message-bearing T-shirts on the National Mall. For some time they have been contesting a National Park Service Regulation banning the sale of T-shirts on the National Mall. On September 12, 1995, the Court enjoined the enforcement of the regulation because this Court found that it violated the First Amendment of the Constitution. The Court of Appeals reversed. In light of the decision of the Court of Appeals, the Court finds itself unable to afford Plaintiffs the relief they seek.

### I.  BACKGROUND

For many years, numerous groups and individuals have been selling message-bearing T-shirts on the National Mall. The National Mall is a strip of national parkland situated in the center of Washington, D.C. It has been the site of some of this nation's most famous political demonstrations and speeches, including Martin Luther King, Jr.'s "I Have a Dream" speech, the Million Man March, and most recently, the Promise Keepers Assemblage. The T-shirts contain various political and religious messages, including statements to raise public awareness of POW/MIAs from the Vietnam War, protests against global warming and ozone-depletion, advocacy for statehood for Washington, D.C., arguments in support of prayer in schools, as well as numerous other slogans and messages.

In 1995, the National Park Service, in order to reduce "discordant and excessive commercialism, as well as degraded aesthetic values," decided to ban the sale of T-shirts on the Mall and in other parks in the National Capital. 59 Fed.Reg. at 25,857 (1994). According to the National Park Service:

> After careful consideration, the NPS has concluded that the basic problem of commercialization and attendant adverse impacts on park values is caused by T-shirt sales. It has also concluded that the problem cannot be abated by other than a ban on such sales on park land. (National Capital Regions Parks; Special Regulations, 60 Fed.Reg. at 17642 (1995)).

The National Park Service regulation provided in pertinent part:

> No merchandise may be sold during the conduct of special events or demonstrations except for books, newspapers, leaflets, pamphlets, buttons, and bumper stickers. 36 C.F.R. § 7.96(k)(2).

In response to the regulation, a number of groups that sold message-bearing T-shirts on the Mall sued to enjoin the regulation as violating their First Amendment rights. On September 12, 1995, this Court enjoined enforcement of the regulation. *See Friends of the Vietnam Veterans Memorial v. Kennedy,* 899 F.Supp. 680 (1995). The Court analyzed the case with the test set forth in *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Under that test, restrictions on expression in

a public forum are valid only if they are: (1) content neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels for communication of the information. *See id.* at 791, 109 S.Ct. at 2753.

The Court found that the absolute ban on the sale of T-shirts was invalid under the *Rock Against Racism* test on two grounds. First, the Court found that the ban did not leave open ample alternative means of communication because the T-shirts are "a unique and especially effective means of communicating the plaintiffs' point of view" and because the "sale of the T-shirt is the primary source of funds that enable these groups to continue to engage in their First Amendment activities." *Friends of the Vietnam Veterans Memorial v. Kennedy,* 899 F.Supp. 680, 684 (1995). Second, the Court found that the ban was not narrowly tailored to the government's interest in reducing commercialism because the Park Service allowed numerous "food vendors to roam the Mall selling ice cream and other food items" and could permit the sale of T-shirts in the areas where these food vendors were located. *Id.* at 686. The Court found that there were numerous ways for the Park Service to restrict the T-shirt vendors to particular areas of the Mall rather than completely banning the activity.

The Court of Appeals reversed. Plaintiffs Henderson and Phillips subsequently moved for leave to file an amended complaint, which raised several new claims, including claims under the Equal Protection Clause, the Religious Freedom Restoration Act, and the Administrative Procedure Act. The Court granted the Plaintiffs' motion for leave to file. Defendants have asked the Court to reconsider. Defendants have also moved to dismiss the cases of all Plaintiffs in light of the opinion of the Court of Appeals.

## II. ANALYSIS AND DISCUSSION

The Court of Appeals' decision leaves this Court with little discretion other than to grant Defendants' motions. The Court finds that in light of the Court of Appeals' opinions in *Friends of the Vietnam Veterans Memorial v. Kennedy,* 116 F.3d 495, 498 (1997)

and *ISKCON of Potomac, Inc. v. Kennedy,* 61 F.3d 949 (1995), the additional claims of Plaintiffs Henderson and Phillips will be futile. The Court of Appeals has made it abundantly clear that the Park Service's absolute ban on the sale of T-shirts passes constitutional muster under the First Amendment. The Court of Appeals afforded deference to the Park Service's judgment that a complete ban was necessary to achieve its purpose. According to the Court of Appeals, the judiciary did not have "the authority to replace the Park Service as the manager of the Nation's parks or ... the competence to judge how much protection of parklands is wise and how that level of conservation is to be attained." *Friends of the Vietnam Veterans Memorial v. Kennedy,* 116 F.3d 495, 498 (1997) (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 299, 104 S.Ct. 3065, 3072, 82 L.Ed.2d 221 (1984)). As a result, the Court of Appeals held that it would not consider "what the Park Service could have done" to limit its regulation so that it would be less restrictive of the Plaintiffs' speech. *Id.* Under this reasoning, the Park Service's regulation would clearly withstand any level of judicial scrutiny. Accordingly, this Court, after reconsidering its grant of leave for Plaintiffs to file their amended complaint, will now deny the Plaintiffs' request for leave to amend their complaint. The Court will also grant Defendants' motion to dismiss the case as to all Plaintiffs.

In its opinion in this case and its earlier opinion in *ISKCON,* the Court of Appeals announced that while Plaintiffs could not sell their wares on the Mall, they could give them away. This distinction between commercial and non-commercial speech has posed a significant problem for those who want to invoke this part of the Court of Appeals' decision and give away their T-shirts. At the recent hearing on Defendants' motions, Plaintiffs raised this issue and have asked the Court to define the permissive bounds of T-shirt giveaways.

In *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), the Supreme Court made it clear that there is little distinction between

commercial and non-commercial speech vis a vis the First Amendment. There, the Court enjoined a city ordinance banning newsracks containing commercial handbills. According to the Court, "Cincinnati's categorical ban on commercial newsracks place[s] too much importance on the distinction between commercial and noncommercial speech." *Id.* at 424, 113 S.Ct. at 1514. The Court rejected the view that commercial speech only has a low value. *Id.* at 418–19, 113 S.Ct. at 1510–11. "In our view, the city's argument attaches more importance to the distinction between commercial and noncommercial speech than our cases warrant and seriously underestimates the value of commercial speech." *Id.* at 419, 113 S.Ct. at 1511. Because the ban did not apply to newsracks containing newspapers, there was not a reasonable fit between the ban and the city's interests in aesthetics and safety. "Each newsrack, whether containing 'newspapers' or 'commercial handbills,' is equally unattractive." *Id.* at 425, 113 S.Ct. at 1514. The Court held that the "very basis for the regulation is the difference between ordinary newspapers and commercial speech." *Id.* at 429, 113 S.Ct. at 1516. This was a content-based distinction because the city improperly singled out commercial speech for the ban.

According to the Court of Appeals, the *Discovery Network* case is not controlling and under the facts in both *ISKCON* and the instant case, a distinction between commercial and non-commercial speech must be recognized.[1] Under its court validated regulations, the Park Service permits the sale of newspapers and other items on the Mall for profit but bans the sale of T-shirts because they are deemed to be "commercial."[2] The opinion of the Court of Appeals in *Friends* recognizes Plaintiffs' absolute right to give away their T-shirts on the nation's parkland.

The Court of Appeals' decision in *ISKCON* further supports this view.

In *ISKCON*, the Court of Appeals upheld the Park Service regulation as applied to the sale of audio tapes and beads: "ISKON's members may display and give the audio tapes and beads to members of the public so long as they do not try to exact a payment or request a donation in exchange for them." *ISKCON*, 61 F.3d at 958. In *Friends*, the Court of Appeals declared that "Of course, there is nothing to stop appellees from giving away their expressive T-shirts on the Mall (or selling them near the Mall)." *Friends*, 116 F.3d at 497. The Court of Appeals also made clear that the Plaintiffs may still solicit donations on the Mall, holding that a Park Service regulation banning in-person solicitation of immediate donations was unconstitutional. *ISKCON*, 61 F.3d at 956.

Plaintiffs claim the Park Service is acting contrary to the Court of Appeals' decisions in not giving full force and effect to the "give away" language. The Park Service claims that the way it has been enforcing this aspect of the Court of Appeals' opinions is pursuant to its notice adopting the ban on the sale of T-shirts:

> [R]estricted merchandise cannot be "given away" and a "donation accepted" or one item "given away" in return for the purchase of another item; such transactions amount to sales. 60 Fed.Reg. at 17648 (1995).

Despite this language, whether someone is giving away something or not is a fact-specific determination. Such a determination preferably should await a case where the issue has been appropriately raised. This should come soon since the Park Service has arrested a number of the message bearing T-shirt vendors for violating the Park Service ban

---

1. Although the Court of Appeals equates commercialism with the solicitation of money, commercialism comes in many different forms and cannot be reduced to such a simple formula. It is the big commercial producer that is most able to afford to give away free T-shirts. Often this is done as a form of promotional advertising, a calculated venture to increase profits in the long-term. Under the reasoning of the Court of Appeals, commercial ventures such as these would be deemed non-commercial merely because no money passes hands.

2. Although the Park Service regulation treats the T-shirt as a lower form of expression than newspapers, buttons, and bumper stickers, this Court believes that "[t]he T-shirt has become a unique means of spreading messages over the last twenty years." Unlike a book or pamphlet, the T-shirt not only carries a message, it also turns the wearer into a 'human billboard'. *Friends*, 899 F.Supp. at 684.

**22**

even though those arrested contend they were doing nothing more than giving away their T-shirts.[3] While Plaintiffs would like a bright line between a "give away" and a sale, at this point, the Court is not the appropriate forum to make such a distinction. In order to avoid the admonition of the Court of Appeals that the role of the judiciary is not "to replace the Park Service as the manager of the Nation's parks," the Court will not provide an advisory opinion. The time to rule on the legality of the Park Service's regulation will come when the criminal charges against the T-shirt vendors come to trial.

■ This nation's citizens appreciate the importance of the Park Services' work in maintaining the beauty of the Mall area. In large part because of the attractiveness of its parklands, Washington, D.C. remains one of the most beautiful capitals in the World. That being said, the constitutional rights of this nation's citizens also require protection.[4] The "message bearing T-shirt people" have now been before this Court since September of 1995. It is abundantly clear that the vast majority of them are law-abiding citizens who are committed to the causes they espouse. They are not wealthy and often are just barely able to eke out an existence. Despite their lack of wealth and in many instances, their poverty-level existence, they have a right to be heard. It is hoped that the Park Service will listen to their voices in the enforcement of its regulations.

---

3. On September 18, 1997, approximately fourteen individuals, including the Plaintiffs, were arrested on the Mall for violating the Park Service regulation. Plaintiffs claim that while they were giving away the T-shirts and soliciting donations, there was no quid pro quo between these two activities. Plaintiffs allege that without any warning, they were arrested, taken into custody (with handcuffs), fingerprinted, photographed, held for approximately four hours, and cited for violating the Park Service regulations. Further, their T-shirts and other materials were confiscated. (Statements made in open court on October 20, 1997).

4. The principal reason given by the Park Service for banning T-shirt sales on the Mall is that such sales create a "flea market" atmosphere. Pursuant to the preliminary injunction issued by this

Court, the sale of T-shirts was confined to discreet portions of the Mall. When the Court made an inspection to ensure that its decree was being faithfully discharged, it did not observe the excessive claims made by the anti-T-shirt proponents. Although the Court of Appeals counsels the judiciary to defer to the judgment of the Park Service, the courts have a constitutional duty to step in when any agency restricts more speech than is necessary. The Court does not believe that its inspection of the Mall supports the contention that only an outright ban is necessary to preserve the beauty of the parkland. Instead, a reasonable time, place, or manner restriction could easily be devised to preserve the beauty of the parkland consistent with the "T-shirt people's" rights under the First Amendment.