**Augustine David HENDERSON,
Appellant,**

v.

**Roger A. KENNEDY, et al., Appellees.**

**Nos. 00–5070 and 00–5071.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 13, 2001.

Decided June 26, 2001.

James M. Henderson, Sr. argued the cause and filed the briefs for appellant.

Marina Utgoff Braswell, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: HENDERSON, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Plaintiffs Henderson and Phillips allege that they are evangelical Christians. They want to sell t-shirts on the National Mall— a practice presently prohibited by a regulation of the National Park Service. Initially they claimed that the Free Speech

Clause of the First Amendment guaranteed them this right. When we ruled against that claim in another case, they amended their complaints to add, among other claims, causes of action based on the Religious Freedom Restoration Act and the Equal Protection component of the Due Process Clause. For the reasons that follow, we affirm the district court's grant of summary judgment in favor of the government.

## I.

The Park Service's regulation, promulgated in 1995, flatly prohibits the sale of goods in designated sections of the National Mall such as the areas immediately surrounding the Lincoln Memorial and the Washington Monument. 36 C.F.R. § 7.96(k)(2). In other Mall areas, during "special events or demonstrations," the sale of "books, newspapers, leaflets, pamphlets, buttons and bumper stickers" is permitted. *Id.* Before this regulation, t-shirts could be sold in conjunction with demonstrations or special events. But "excessive commercialism" had "degraded aesthetic values" and converted much of the Mall area into a "flea market." National Capital Region Parks; Sales, 59 Fed.Reg. 25,855, 25,857 (May 18, 1994). The Park Service therefore decided to ban certain commercial transactions from the Mall, including the sale of t-shirts. National Capital Region Parks; Special Regulations, 60 Fed.Reg. 17,639 (Apr. 8, 1995).

Lawsuits challenging the regulation included one brought by seven non-profit organizations that had been selling t-shirts on the Mall, and separate pro se complaints by Henderson and Phillips. *See Friends of the Vietnam Veterans Memorial v. Kennedy,* 899 F.Supp. 680 (D.D.C.

1995) (*"Friends I"*), *rev'd,* 116 F.3d 495 (D.C.Cir.1997) (*"Friends II"*), *on remand,* 984 F.Supp. 18 (D.D.C.1997) (*"Friends III"*), *rev'd sub nom. Henderson v. Stanton,* 172 F.3d 919 (table), 1998 WL 886989 (D.C.Cir.1998) (unpublished opinion) (*"Henderson III"*); *Henderson III, on remand,* 76 F.Supp.2d 10 (D.D.C.1999) (*"Henderson IV"*).[1] The suits alleged that the ban on the sale of t-shirts abridged the freedom of speech in violation of the First Amendment.

The International Society of Krishna Consciousness (ISKCON) also brought an action claiming, among other things, that an earlier Park Service regulation violated the First Amendment to the extent that it prohibited the sale of audio tapes and religious beads on the Mall. Our decision, rendered in August 1995, sustained the regulation's ban on the sale of beads and audio tapes. *ISKCON of Potomac, Inc. v. Kennedy,* 61 F.3d 949 (D.C.Cir.1995). Nonetheless, the district court later granted summary judgment in favor of the non-profit organizations. *Friends I,* 899 F.Supp. at 688. The district court reasoned that message-bearing t-shirts were "a unique and especially effective means" of communicating a viewpoint, *id.* at 684, and that the Park Service's allowing other forms of commercial activity on the Mall undercut the rationale of its ban. *Id.* at 686. We reversed, holding that the case was controlled by *ISKCON,* and that the regulation did not violate the First Amendment. *Friends II,* 116 F.3d 495.

After *Friends II,* counsel for Henderson and Phillips entered an appearance, and moved for leave to file an amended complaint, seeking to add equal protection claims and claims under the Religious

---

**1.** *Henderson v. Lujan,* 768 F.Supp. 1 (D.D.C. 1991), and *Henderson II, Henderson v. Lujan,* 964 F.2d 1179 (D.C.Cir.1992), challenged different provisions of an earlier version of the same regulation, and are not relevant here.

Freedom Restoration Act (RFRA) and the Administrative Procedure Act. *Friends III*, 984 F.Supp. at 20. The district court initially granted leave to amend, but reconsidered, and denied leave on the ground that the amendments would be futile in light of *Friends II*. *Id.* In *Henderson III*, an unpublished opinion, we reversed because the court had not explained its holding. 172 F.3d 919 (table).

Henderson and Phillips then amended their complaints to add the new causes of action and to allege that they "hold[ ] the sincere religious belief that [they are] obliged by the Great Commission to preach the good news, the gospel, of salvation through Jesus Christ to the whole world." The amended complaints also alleged that they have "a religious vocation to communicate by all available means the message of the Gospel." As part of their religious "outreaches" on the National Mall, both had sold t-shirts in the past, and both want to continue doing so. To that end, they sought declaratory and injunctive relief. The government moved to dismiss or, in the alternative, for summary judgment. Both sides submitted declarations in support of their pleadings. The district court, apparently treating the government's motion as one for summary judgment, granted it. *Henderson IV*, 76 F.Supp.2d at 16.

## II.

### A.

We begin with plaintiffs' claims that the regulation's ban on selling t-shirts on the Mall violates their rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.* Congress enacted RFRA in response to *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The *Smith* Court held that the Free Exercise Clause

of the First Amendment—"Congress shall make no law … prohibiting the free exercise" of religion—did not exempt individuals from complying with "neutral, generally applicable" laws, even if the laws substantially burdened religious exercise. 494 U.S. at 881, 110 S.Ct. 1595. In RFRA Congress sought to overturn the *Smith* decision by restoring the test set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), as the standard for Free Exercise challenges to laws of general applicability. *See City of Boerne v. Flores*, 521 U.S. 507, 512–13, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997); Michael W. McConnell, *Institutions and Interpretation: A Critique of City of Boerne v. Flores*, 111 Harv. L.Rev. 153, 157 (1997). Under *Sherbert*, the question had been whether the law "substantially burdened" a religious practice and, if so, whether the burden was justified by a compelling governmental interest. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). RFRA incorporated the "substantial burden" standard. It prohibited any "branch, department, agency, instrumentality, [or] official" of a state or federal government or "other persons acting under color of law" from "substantially burden[ing] a person's exercise of religion" unless the government demonstrated that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that … interest." 42 U.S.C. § 2000bb–1. *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C.Cir.2000).

*City of Boerne* struck down the portion of RFRA regulating state and local governments because Congress had exceeded its power under § 5 of the Fourteenth Amendment. 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624. RFRA was not "remedial, preventive legislation." *Id.* at 532, 117 S.Ct. 2157. It did not enforce the Free

Exercise Clause. *Id.* at 519, 532, 117 S.Ct. 2157. Instead Congress had attempted to alter the Supreme Court's interpretation of that constitutional provision.

■ An initial question in light of *City of Boerne* is whether the remainder of RFRA—the portion applicable to the federal government (and not enacted pursuant to the § 5 of the Fourteenth Amendment)—survives the Court's decision. If severance of the invalid part of a statute results in legislation that it is evident Congress would not have enacted, then the entire statute should be considered invalid. *See Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684–86, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987); *United States v. Raines,* 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). We mentioned this issue at oral argument, but the government failed to argue the point in its brief. And so we will leave to another day the question whether RFRA is severable, as the Eighth and Tenth Circuits believe. *See Kikumura v. Hurley,* 242 F.3d 950, 959 (10th Cir.2001); *In re Young,* 141 F.3d 854, 858–59 (8th Cir.1998).

■ As to the validity of the regulation under RFRA, we start with the proposition that the regulation is neutral; it is generally applicable and it does not discriminate among viewpoints. Our decision in *ISKCON* settled as much. 61 F.3d at 957–58. Under RFRA, then, the question is: does the ban on selling t-shirts on the Mall "substantially burden" plaintiffs' exercise of their religion? The answer is clearly no. We are not aware of any religious group that has as one of its tenets selling t-shirts on the National Mall, even if the t-shirts bear a religious message. Plaintiffs do not claim to belong to any such group, nor do they allege that selling t-shirts in that particular area of the District of Columbia is central to the exercise of their religion. In their identical decla-

rations, submitted in opposition to summary judgment, Henderson and Phillips stated only that they "hold the sincere religious belief that [they] are obligated by the Great Commission to preach the good news, the gospel, of salvation through Jesus Christ to the whole world ... by all available means...." With respect to t-shirts, they stated that in "obedience to [their] vocation, [they] have distributed at a price publications and t-shirts that [they have] written or designed, or containing content that conforms with [their] beliefs, because the preparation of these materials requires money; [their] vocation includes the distribution of such materials for an amount that covers the cost to create them and to enable [them] to carry out [their] vocation."

Given these representations, plaintiffs cannot claim that the regulation forces them to engage in conduct that their religion forbids or that it prevents them from engaging in conduct their religion requires. *See Goodall by Goodall v. Stafford Country Sch. Bd.,* 60 F.3d 168, 172–73 (4th Cir.1995); *Cheffer v. Reno,* 55 F.3d 1517, 1522 (11th Cir.1995); *Bryant v. Gomez,* 46 F.3d 948 (9th Cir.1995) (per curiam). Their declarations do not suggest that their religious beliefs demand that they sell t-shirts in every place human beings occupy or congregate. There is no indication that they have followed—or attempted to follow—any such practice. If they had, there is no doubt that they would have come in conflict with a host of federal, state and local restrictions on commercial activities in many areas, including for instance the interiors of government buildings open to the public. Nor does the regulation "significantly inhibit or constrain conduct or expression that manifests some central tenet of [Henderson's or Phillips's] individual beliefs." *Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.

1995). Plaintiffs have not treated selling t-shirts on the Mall as rising to that level of significance in their religion. Further, plaintiffs have merely alleged that it is their vocation to spread the gospel by "all available means." Because the Park Service's ban on sales on the Mall is at most a restriction on one of a multitude of means, it is not a substantial burden on their vocation. Plaintiffs can still distribute t-shirts for free on the Mall, or sell them on streets surrounding the Mall. *See Weir v. Nix*, 114 F.3d 817 (8th Cir.1997) (considering alternatives in determining whether burden was "substantial"); *Bryant*, 46 F.3d 948 (no "substantial burden" where alternatives were available).

We acknowledge that the Seventh Circuit, in a pre-*Boerne* state prison case arising under RFRA, listed among the tests for determining whether there is a substantial burden on the exercise of religion the question whether the governmental restriction forced "adherents of a religion to refrain from religiously motivated conduct," *Mack v. O'Leary*, 80 F.3d 1175, 1178 (7th Cir.1996) (*citing Brown–El v. Harris*, 26 F.3d 68, 70 (8th Cir.1994)).[2] We are not applying that standard for several reasons. First, plaintiffs did not advocate it. Second, our opinion in *Branch Ministries* relied on a narrower test. 211 F.3d at 142. To our court, "substantial burden" in RFRA is what the Supreme Court had in mind in its pre-*Smith* opinion in *Jimmy Swaggart Ministries v. Board of Equalization*, 493 U.S. 378, 384–85, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990): the proper free exercise inquiry was whether "the government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." The idea that a restriction on religiously motivated conduct requires a compelling governmental interest is inconsistent with the formulation just quoted. One can conceive of many activities that are not central or even important to a religion, but nevertheless might be religiously motivated. In fact it is hard to think of any conduct that could not potentially qualify as religiously motivated by someone's lights. To make religious motivation the critical focus is, in our view, to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement. Despite the language we have quoted from the *Mack* opinion, *see supra* note 2, we do not think this is what the Seventh Circuit intended. Later in its opinion, the court of appeals indicated that under its test courts must "separate center from periphery in religious observances," that only practices that are "important" (if not central) to the religion qualify, and that the "proper and feasible question for the court is simply whether the practices in question are important to the votaries of the religion...." 80 F.3d at 1179–80.

### B.

▉ Plaintiffs also mount an equal protection attack on the t-shirt sales ban. They argue that the Park Service has not applied its regulations equally because there have been demonstrations in which—they allege—t-shirts were sold on the Mall without the Park Service taking action against the vendors. The contention is, in essence, one of selective enforce-

---

**2.** The full text of the court's holding is as follows:

We hold, therefore, that a substantial burden on the free exercise of religion, within the meaning of the Act, is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs.

*Mack*, 80 F.3d at 1179.

ment, a claim plaintiffs have not come close to making out.

The Park Service submitted the declaration of Richard Merryman, Chief of the Division of Park Programs, National Capital Parks–Central, who explained that the Service "seeks to monitor the activities of permittees on parkland to ensure permit and regulatory compliance.... Whenever violations are discovered ... action is taken to ensure compliance with permits and regulations." Plaintiffs presented nothing in rebuttal. Even if there had been lapses in enforcement, there was no indication that these were attributable to impermissible discrimination. Plaintiffs, in short, failed to adduce admissible evidence showing inconsistent treatment based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)); *see also Sanjour v. EPA,* 56 F.3d 85, 92 n. 9 (D.C.Cir.1995); *United States v. Grace,* 778 F.2d 818, 822 n. 7 (D.C.Cir.1985).

■ Plaintiffs also allege an equal protection violation because the Park Service permits Guest Services, Inc., a concessionaire, to operate a number of facilities on the Mall in which it sells various items, including food and t-shirts. In *Friends II* we rejected an argument, based on these kiosk sales, that "in areas where the Park Service already allows a certain degree of commercialism," the First Amendment's Free Speech Clause requires that it also allow t-shirt sales. 116 F.3d at 498. So here. Plaintiffs have not shown that they are "similarly situated" to the commercial vendor. *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1984); *Women Prisoners of D.C. Dep't of Corrections v. District of Columbia,* 93 F.3d 910, 924 (D.C.Cir.1996). The concessions at issue

are expressly authorized by statute, 16 U.S.C. §§ 5951–5966, they are carefully regulated to ensure that they do not have a negative impact on the Mall, and they are "limited only to those facilities and services necessary and appropriate for the convenience of the public." 60 Fed.Reg. at 17,647. So far as the record reveals, plaintiffs have not applied to become concessionaires and they have not sought to meet any of the regulatory requirements governing concessionaires. *Id.*

■ In essence, plaintiffs ask us to hold that equal protection requires the Park Service to ban t-shirt sales by all possible vendors, or by none. However, "[i]t is not a requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949). Congress has decided that some concessions may be appropriate to serve park visitors, and the Park Service has adopted a reasonable scheme to accomplish that end while preserving the aesthetic integrity of the National Mall. The classification of which plaintiffs complain "does not contain the kind of discrimination against which the Equal Protection Clause affords protection." *Id.* The district court rightly held that they had not made out a colorable equal protection claim.

### C.

■ Plaintiffs also attempted to raise several First Amendment claims. We say "attempted" because it is not clear to us what arguments plaintiffs were trying to convey. For a few pages of their brief they characterized themselves as members of the press entitled to the protection of the freedom of the press guarantee in the First Amendment. The argument, to the extent it may be considered as such, goes nowhere. The Washington Post is no more entitled to sell t-shirts on the Mall

than anyone else. In *Friends II* and *ISKCON,* we applied time, place and manner analysis to determine that the Park Service's regulation was valid under the First Amendment because it was content neutral, narrowly tailored to achieve a significant government interest, and left open ample alternative channels of communication. *Friends II,* 116 F.3d at 497; *ISKCON,* 61 F.3d at 958. Those decisions are controlling here, regardless of the identity of the prospective t-shirt sellers.

We also reject plaintiffs' contention that the regulation should receive some heightened scrutiny because they are presenting some sort of "hybrid claim" resting on both the Free Exercise Clause and the Free Speech Clause of the First Amendment. For this argument to prevail, one would have to conclude that although the regulation does not violate the Free Exercise Clause, *see Employment Division,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, and although they have no viable First Amendment claim against the regulation, *see Friends II,* 116 F.3d at 498, the combination of two untenable claims equals a tenable one. But in law as in mathematics zero plus zero equals zero. Plaintiffs appear to recognize as much in their reply brief, where they admit that their "hybrid claim" "depends for its success on [plaintiffs] succeeding with either their free speech or free press claims." At any rate, we have already rejected the sort of "hybrid claim" they are making here. *See ISKCON,* 61 F.3d at 958.

Plaintiffs' remaining arguments have insufficient merit to warrant discussion. We have considered and rejected each of them. Accordingly, the judgment of the district court is

*Affirmed.*