**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL HUNT and MATTHEW
DOWD,
　　　*Plaintiffs-Appellees,*
　　　*Cross-Appellants,*

　　　v.

CITY OF LOS ANGELES,
　　　*Defendant-Appellant-*
　　　*Cross-Appellee.*

Nos. 09-55750
09-55765

D.C. No.
2:-06-cv-04691-
DDP-SS

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
November 5, 2010—Pasadena, California

Filed March 22, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and J. Michael Seabright,* District Judge.

Opinion by Judge Seabright

---

*The Honorable J. Michael Seabright, United States District Judge for
the District of Hawaii, sitting by designation.

## COUNSEL

Stephen F. Rohde, Rohde & Victoroff, Los Angeles, California, for the plaintiffs-appellees-cross-appellants.

Garmen A. Trutanich, Laurie Rittenberg, and Todd T. Leung, Office of the City Attorney, Los Angeles, California, for the defendant-appellant-cross-appellee.

## OPINION

SEABRIGHT, District Judge:

The Venice Beach Boardwalk (the "Boardwalk"), located on the west side of Los Angeles, is world-famous for its free performances and public expression activities. Due to over-crowding, safety concerns, and to promote local businesses in the area, the City of Los Angeles (the "City") has implemented a number of ordinances aimed at preventing vending on the Boardwalk, including Los Angeles Municipal Code ("LAMC") § 42.15 (2004), LAMC § 42.15 (2006), and LAMC § 63.44. Although none of these ordinances is still in effect, Michael Hunt ("Hunt") and Matthew Dowd ("Dowd") (collectively, "Plaintiffs"), who sell items on the Boardwalk, have brought claims for damages pursuant to 42 U.S.C. § 1983, arguing a panoply of reasons why these ordinances are unconstitutional.

The City appeals the district court's grant of summary judgment in favor of Hunt as to LAMC § 42.15 (2004) and the subsequent damages and attorneys' fee awards, while Plaintiffs cross-appeal the district court's grant of summary judgment to the City as to LAMC § 42.15 (2006) and failure to consider the constitutionality of LAMC § 63.44. Based on the following, we AFFIRM the district court's findings as to both versions of LAMC § 42.15, and REMAND for the district court to address LAMC § 63.44 in the first instance.

## I.  *BACKGROUND*

### A.   The Ordinances at Issue

#### 1.   *LAMC § 42.15 (2004)*

In October 2004, the City amended LAMC § 42.15 "to require that the public expression activities allowed by that section be exercised in designated spaces on the Venice Beach Boardwalk, and the use of those designated spaces be regulated by a permit process." The City Council explained that the number of persons wishing to exercise their right of public expression had increased, "creating problems in noise, crowd control, and competition for space," and that this provision would help, among other things, to alleviate noise, control crowds, provide emergency access for health, safety and law enforcement purposes, and allocate the available space on the Boardwalk in an equitable manner.

LAMC § 42.15 (2004) required that individuals who seek payments and/or donations from their activities on the Boardwalk hold a "Public Expression Participant Permit." In turn, these permit holders were allotted individual spaces on the Boardwalk to conduct their activities. Although LAMC § 42.15(A) (2004) provided that "[n]o person shall hawk, peddle, vend or sell, or request or solicit donations for, any goods, wares, merchandise, foodstuffs or refreshments upon [the Boardwalk]," it in turn allowed permit holders to sell "merchandise constituting, carrying or making a religious, political, philosophical or ideological message or statement which is inextricably intertwined with the merchandise." LAMC § 42.15(C) (2004). A permit holder who violated LAMC § 42.15 (2004) was subject to losing the permit, and to criminal penalties.

#### 2.   *LAMC § 42.15 (2006)*

After facing litigation over LAMC § 42.15 (2004), the City suspended the ordinance in August 2005 and passed a new

version in February 2006. The 2006 version required that any person engaging in allowable activities on the Boardwalk obtain a "Public Expression Participant Permit," and spaces on the Boardwalk were assigned pursuant to a weekly lottery system.

Regardless of whether an individual had a permit, LAMC § 42.15 (2006) contained a broad vending ban.[1] This prohibition on vending was inapplicable, however, to:

> (1) Any individual or organization vending newspapers, leaflets, pamphlets, bumper stickers or buttons;

> (2) Any individual or organization that vends the following items, which have been created, written or composed by the vendor: books, cassette tapes, compact discs, digital video discs, paintings, photographs, sculptures or any other item that is inherently communicative and has nominal utility apart from its communication;

> Although an item may have some expressive purpose, it will be deemed to have more than nominal utility apart from its communication if it has a common and dominant non-expressive purpose. Examples of items that have more than nominal utility apart from their communication and thus may not be vended under the provisions of this section, include, but are not limited to, the following: housewares, appliances, articles of clothing, sunglasses, auto parts, oils, incense, perfume, lotions, candles, jewelry, toys, and stuffed animals;

---

[1]Section 42.15(b)(3) (2006) defined "vending" as "[t]o sell, offer for sale, expose for sale, solicit offers to purchase, or . . . to require someone to pay a fee or to set, negotiate, or establish a fee before providing goods or services. Requests for donations in exchange for food, goods, merchandise or services also constitute vending."

(3) Performances by performing artists and musicians.

A permit holder who violated LAMC § 42.15 (2006) was subject to losing the permit and criminal penalties.

LAMC § 42.15 (2006) was ultimately amended by Ordinance number 179,807, which took effect May 19, 2008.

### 3. LAMC § 63.44

Plaintiffs also challenge several provisions of LAMC § 63.44, which prohibited various activities "within the limits of any park or other City-owned Harbor Department designated and controlled property within the city of Los Angeles." The challenged provisions were suspended by Ordinance number 176,929, effective October 1, 2005.

## B. Plaintiffs' Activities

### 1. Hunt

Hunt sells shea butter on the Boardwalk. Hunt sets up three different tables with his shea butter, decorated with tablecloths and roses. According to Hunt, his area is "the Garden of Eve and [I] really just make it look nice and smell good, as if I was in heaven." As people pass his stand, Hunt provides a standard sales pitch — "Here's what you better ask yourself: Have you been buttered up, or have you been buttered down? Have you seen that doggone butter man, because that butter man's back in town. Get buttered up, and get buttered down. Come get your free sample, 'cause that butter man's back in town." For those who stop and obtain a free sample, Hunt "give[s] them a full therapeutic hand massage and anoint[s] them," and asks whether they can feel the "healing power" of the shea butter. Hunt further tells them that "[s]hea butter is an African nut that aged over 365 years that protects your skin from stretch marks, scars, and blemishes,

heals eczema . . . and it's anointing, and it has a very, very good vitamin A, E, and F, contact-neutral base to it."

Hunt has been issued an Expression Permit, but has been arrested for violation of each of the ordinances at issue in this action.

### 2.  *Dowd*

Dowd, since 2005, has sold his original design incense flavor called "Pacific Breeze," along with incense holders and oil burners with engraved symbols. As people pass by his stand on the Boardwalk, Dowd says, "Hey. Come over and check out my original incense flavor. Smell this. Tell me if you like it. It's my own design of coconut, mango, and strawberry." If the prospective customer appears interested, Dowd explains how his product "differs from commercial brands of incense, how they're soaked in [his] original oil, they don't smell of smoke or wood, they last a lot longer, and they keep fresh inside the sealed plastic bag which [he] provide[s]."

Dowd's incense holders and oil burners display the following five symbols: (1) yin-yang, (2) elephant, (3) dragon, (4) sun, and (5) stars and moon. Dowd has a sign that explains the religious and/or mythological significance of each of these symbols, and he also distributes flyers explaining these symbols and how to use his coffin-box incense holder. His flyers explain his belief that "the burning of incense symbolizes the breakdown of a being from an organic state into a molecular state, and the release of energy back into the biosphere." His coffin-box holders symbolize "the funeral casket, and the resultant ashes are the by-product of the energy transfer by combustion of the organic material." The primary message that Dowd attempts to convey, however, is that he has "created and designed [his] own original flavor which [he] believe[s] is better than a lot of the other commercially available incense that are out there."

Dowd has been issued an Expression Permit, but was arrested on two occasions for illegal vending in violation of LAMC § 42.15 (2006). Dowd conceded that he was never arrested for violation of LAMC § 42.15 (2004), and the record is unclear whether LAMC § 63.44 was enforced against him.

## C. Determinations Below

On July 27, 2006, Plaintiffs filed this action facially challenging LAMC §§ 42.15 (2004), 42.15 (2006), and 63.44. On cross-motions for summary judgment, the district court found that Hunt had standing to challenge § 42.15 (2004) and that it was unconstitutionally vague. As to § 42.15 (2006), the court found that the vagueness challenge failed because Plaintiffs' conduct was clearly proscribed by the ordinance, the improper time, place, or manner challenge failed because Plaintiffs were not engaged in protected speech, and Plaintiffs' commercial speech argument failed because the ordinance was not more extensive than necessary to serve the City's interests. The court did not expressly address Plaintiffs' prior restraint argument. Further, based on Plaintiffs' assertion during the hearing that they were primarily challenging the two versions of § 42.15, the court did not address Plaintiffs' arguments as to LAMC § 63.44. *See Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158, 1161 n.1 (C.D. Cal. 2009).

On February 3, 2009, a jury trial on damages commenced, and on February 6, 2009, the jury returned a verdict in favor of Hunt for $264,286. Judgment was entered on April 23, 2009. On May 14, 2009, the City appealed the judgment, and Plaintiffs cross-appealed on May 19, 2009. In the meantime, on May 6, 2009, Hunt filed his motion for attorneys' fees and costs. On July 10, 2009, the district court granted Hunt's motion for $207,285 in attorneys' fees and $1,368.07 in costs. On September 9, 2009, Hunt filed an amended notice of appeal as to the attorneys' fee order, which was subsequently withdrawn as untimely. The City, however, did not file a separate notice of appeal as to the attorneys' fee order.

## II.  *STANDARD OF REVIEW*

The district court's grant of summary judgment in favor of Hunt as to the 2004 ordinance and in favor of the City on the 2006 ordinance is reviewed de novo, under the same standards applied by the district court. *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008); *Arakaki v. Hawaii*, 314 F.3d 1091, 1094 (9th Cir. 2002). The panel "must determine whether, viewing the evidence in the light most favorable to the non-moving party, any genuine issues of material fact exist, and whether the district court correctly applied the relevant substantive law." *Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997).

## III.  *ANALYSIS*

As to each of the ordinances at issue, Plaintiffs assert that the ordinance is invalid as (1) vague, (2) an invalid time, place and manner restriction, (3) an improper limit on commercial speech, and (4) a prior restraint. We first outline general standing principles, and then address the specific ordinances at issue.

### A.   General Standing Principles

To maintain their challenge to the ordinances at issue in this action, Plaintiffs "must establish constitutional standing with regard to the provisions challenged." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006). "Standing, in the constitutional sense, requires that plaintiffs establish (1) a 'distinct and palpable' injury in fact (2) that is 'fairly traceable' to the challenged provision and (3) that would 'likely . . . be redressed' by a favorable decision for the plaintiff." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019 (2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)).

Beyond these general standing requirements, constitutional claims also trigger special standing principles. "First, a plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance 'is unconstitutionally vague or . . . impermissibly restricts a protected activity.' " *Santa Monica Food Not Bombs*, 450 F.3d at 1033 (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). In making a vagueness challenge, a plaintiff actually raises a due process, as opposed to First Amendment, claim. *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010); *United States v. Williams*, 553 U.S. 285, 304 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). In making such claim, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Humanitarian Law Project*, 130 S. Ct. at 2719 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). In other words, to raise a vagueness argument, Plaintiffs' conduct must not be "clearly" prohibited by the ordinances at issue.

"Second, 'an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court.' " *Santa Monica Food Not Bombs*, 450 F.3d at 1033 (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985)). Where a plaintiff challenges an ordinance based on the violation of third parties' rights, however, § 1983 damages are not available because there has been no violation of the plaintiff's own constitutional rights. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006)). A plaintiff may nonetheless seek damages by raising an as-applied challenge, asserting "that the law is unconstitutional as applied to his own speech or expressive conduct." *Santa Monica Food Not Bombs*, 450 F.3d at 1034; *see also Nunez by*

*Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997) (recognizing that while "[t]echnically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression . . . . Plaintiffs may seek directly on their own behalf the facial invalidation of overly broad statutes that 'create an unacceptable risk of the suppression of ideas.' " (quoting *Sec'y of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 965 n.13 (1984)).[2]

Thus, Plaintiffs must base their claims on a restriction of their own constitutionally protected conduct.

## B.   Plaintiffs' Claims on the Ordinances at Issue

### 1.   *LAMC § 42.15 (2004)*

The district court found that Hunt had standing to raise a vagueness claim and that LAMC § 42.15 (2004) was void for vagueness.[3] We agree — Hunt meets the standing requirements because the ordinance was enforced against him and his conduct was not clearly proscribed by LAMC § 42.15 (2004), and the ordinance is impermissibly vague.

**[1]** As to the first inquiry, the vaguer an ordinance is, the less likely it will be found to "clearly proscribe" conduct. Section 42.15(C) (2004), which allows individuals with permits to sell "merchandise constituting, carrying or making a religious, political, philosophical or ideological message or state-

---

[2]While some courts have discussed arguments regarding prior restraints and improper time, place, or manner restrictions as being overbreadth claims, see, e.g., *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973), other courts have discussed them as distinct doctrines. *See, e.g., Maldonado v. Morales*, 556 F.3d 1037, 1046-48 (9th Cir. 2009). In this case, because Plaintiffs seek damages, they must prove a violation of their own rights, regardless of the precise characterization of their claims.

[3]The district court also found that Dowd did not have standing to challenge LAMC § 42.15 (2004) because it was never enforced against him. Plaintiffs do not appeal this determination.

ment which is inextricably intertwined with the merchandise," provides a prime example of an ordinance with contours so undefined that even Hunt's sale of shea butter is not *clearly* proscribed.

**[2]** Section 42.15 (2004) is ambiguous in at least two respects. First, it fails to define or provide any examples of when merchandise carries a "religious, political, philosophical or ideological" message, and these terms have such amorphous meanings that it makes it difficult, if not impossible, for an individual to determine whether his conduct is proscribed by the ordinance. For example, one modern source defines "ideology" as, among other things, "the body of doctrine, myth, belief, etc., that guides an individual, social movement, institution, class, or large group," "the study of the nature and origin of ideas," or "theorizing of a visionary or impractical nature." Dictionary.com, http://dictionary.reference.com/ browse/ideology (defining "ideology") (last accessed March 15, 2011). "Philosophy" is defined as, among other things, "the rational investigation of the truths and principles of being, knowledge, or conduct," "a system of principles for guidance in practical affairs," or "a philosophical attitude, as one of composure and calm in the presence of troubles or annoyances." Dictionary.com, http://dictionary.reference .com/browse/philosophy (defining "philosophy") (last accessed March 15, 2011). Finally, "religious" means, among other things, "imbued with or exhibiting religion; pious; devout; godly," "scrupulously faithful; conscientious," or "appropriate to religion or to sacred rites or observances." *See* Dictionary.com, http://dictionary.reference.com/browse/ religious (defining "religious") (last accessed March 15, 2011). These broad definitions cast correspondingly broad nets of what conduct is permissible and § 42.15 (2004) provides no limiting examples to illustrate when an individual's sale of merchandise falls within these definitions. *Cf. Humanitarian Law Project*, 130 S. Ct. at 2728 (stating that Congress "added clarity" to a statute by providing narrowing definitions

of certain terms and explaining when a violation of the statute occurs).

**[3]** Second, § 42.15 (2004) fails to explain when merchandise has a message that is "inextricably intertwined" with it, leaving unanswered whether the product itself must carry and display the message, or whether it is sufficient for the vendor to explain the product's message. If it is the former, then § 42.15 (2004) would permit the sale of very few items except those with wording or explicit religious, political, ideological, or philosophical messages. If it is the latter, then almost any product could be sold so long as the vendor attributes a religious, political, ideological, or philosophical message to the product. Again, § 42.15 (2004) provides no examples or explanations as to which interpretation applies.

**[4]** Hunt's speech and sale of shea butter — in the context of an ordinance with few meaningful contours — include some elements that may be considered religious, philosophical, or ideological. Specifically, Hunt welcomes potential customers to the "Garden of Eve," "anoints" customers with free samples, and asks them whether they can feel "the healing power" of the shea butter. Each of these aspects of Hunt's speech is tied directly to his shea butter, raising the open question of whether his shea butter is inextricably intertwined with these arguably religious, ideological, and/or philosophical messages. Given the vagaries of the ordinance, we cannot conclude that § 42.15 (2004) *clearly* proscribes his conduct. Hunt therefore has standing to challenge LAMC § 42.15 (2004) as vague. *See Humanitarian Law Project*, 130 S. Ct. at 2719.

**[5]** As to the merits of Hunt's vagueness claim, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). An ordinance may be void for vagueness because either it (1) fails to give a "person of ordinary intelligence a reasonable opportunity to

know what is prohibited;" (2) "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application;" or (3) "abut(s) upon sensitive areas of basic First Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms." *Id.* Further, where criminal sanctions are involved and/or the law implicates First Amendment rights such as here, a "more demanding" standard of scrutiny applies. *See Humanitarian Law Project*, 130 S. Ct. at 2724 (stating that where a regulation is related to expression, the court "must apply a more demanding standard" (quotation and citation signals omitted)); *Maldonado*, 556 F.3d at 1045 (concluding that where criminal sanctions are involved, "[t]he standards of certainty in statutes punishing for offenses is higher than in those depending primarily on civil sanction for enforcement").

[6] First, § 42.15 (2004) clearly fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Second, given that the line between allowable and prohibited sales of merchandise is so murky, enforcement of the ordinance poses a danger of arbitrary and discriminatory application. Indeed, as the City admitted, a police officer would have to engage in a "highly fact-specific analysis" to determine whether a person selling merchandise is relaying a message, whether that message qualifies as being religious, political, philosophical, or ideological, and whether that message is inextricably intertwined with the products being sold. Without any clear guidance from § 42.15 (2004) on these issues, such determinations would necessarily be left to the subjective judgment of the officer.[4] Finally, this lack of clarity

---

[4]*See City of Chicago v. Morales*, 527 U.S. 41, 56, 62 (1999) (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness where the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004) (invalidat-

may operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished.

That the City based § 42.15 (2004) on the standard developed in *Gaudiya Vaishnava Society v. City & County of San Francisco*, 952 F.2d 1059 (9th Cir. 1990), does not change the analysis. In *Gaudiya*, nonprofit organizations challenged an ordinance that prohibited nonprofit organizations from selling merchandise in the Fisherman's Wharf or Union Square areas of San Francisco without a peddler's permit. *Id.* at 1060-61. These organizations argued that their conduct of informing individuals of their causes and at the same time selling merchandise affixed with their messages was speech fully protected by the First Amendment. *Id.* at 1063. *Gaudiya* determined that full First Amendment protection applies to the sale of merchandise so long as the "sale of merchandise [ ] is inextricably intertwined with a statement carrying a religious, political, philosophical or ideological message," and that the non-profit organizations' activities fell within this definition. *Id.* at 1064-66; *see also Perry v. L.A. Police Dep't*, 121 F.3d 1365, 1368 (9th Cir. 1997) (holding that the sale of "music, buttons, and bumper stickers bearing political, religious, and ideological messages" was fully protected by the First Amendment); *One World One Family Now v. City & Cnty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996)

---

ing a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" as void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others") (internal quotation and citation omitted); *Free Speech Coal. v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999) (holding a provision that criminalized sexually explicit images that "appear[ ] to be a minor" or "convey the impression" that a minor is depicted unconstitutionally vague because it was unclear "whose perspective defines the appearance of a minor, or whose impression that a minor is involved leads to criminal prosecution").

(explaining that non-profit corporations who sell merchandise with philosophical and inspirational messages to help spread their messages were engaged in protected activity).

By incorporating the standard developed in *Gaudiya*, the City attempted to exempt fully protected speech from § 42.15 (2004)'s prohibition on vending. But simply reciting this legal standard fails to provide guidance regarding when a message is "inextricably intertwined" with the merchandise, and what types of messages qualify as religious, philosophical, political, or ideological. That § 42.15 (2004) was to be enforced by a police officer having to make a split-second decision on the Boardwalk and not a court carefully weighing all of the facts and legal precedent highlights the lack of clarity and potential for arbitrary application and enforcement. In short, copying *Gaudiya's* legal standard and pasting it into § 42.15 (2004) does not offer the City a per se safe harbor from a vagueness challenge.

**[7]** Thus, we conclude that Hunt has standing to raise a vagueness challenge, and that LAMC § 42.15 (2004) is unconstitutionally vague.[5]

### 2.   *LAMC 42.15 (2006)*

Plaintiffs argue that LAMC § 42.15 (2006) is (1) vague, (2) an invalid time, place and manner restriction, (3) an improper limit on commercial speech, and (4) a prior restraint. We address these arguments in turn.

---

[5]Given this conclusion, we decline to address Hunt's additional arguments seeking to invalidate LAMC § 42.15 (2004).

The City also argues that should the court conclude that LAMC § 42.15 (2004) is void for vagueness, the district court erred in invalidating all of the ordinance as opposed to just § 42.15(C) (2004), which included the various exceptions to the prohibition on vending. Because LAMC § 42.15 (2004) is no longer in effect, and because the City did not raise the severability issue before the district court, we decline to address that argument.

### a. Vagueness

**[8]** Plaintiffs' vagueness challenge fails because their conduct is clearly proscribed by § 42.15 (2006). Unlike its 2004 predecessor, LAMC § 42.15 (2006) provides clear definitions regarding what merchandise an individual may or may not sell on the Boardwalk. Permit holders may sell any item "which ha[s] been created, written or composed by the vendor," "is inherently communicative," and "has nominal utility apart from its communication," such as "books, cassette tapes, compact discs, digital video discs, paintings, photographs, [and] sculptures." LAMC § 42.15(c)(2) (2006). On the other hand, permit holders may not sell items that have a "common and dominant non-expressive purpose," such as "housewares, appliances, articles of clothing, sunglasses, auto parts, oils, incense, perfume, lotions, candles, jewelry, toys, and stuffed animals." *Id.*

Based on these guidelines, a vendor can simply ask — is the merchandise I wish to sell inherently communicative with nominal utility, or does the merchandise have a common and dominant non-expressive purpose? And answering this question, the vendor need only compare his merchandise with the examples provided in § 42.15 (2006) to determine whether he can sell this merchandise.

In opposition, Plaintiffs argue that § 42.15 (2006) leaves unanswered when an item is "inherently communicative," and/or has "nominal utility apart from its communication," and what the differences are between "some expressive purpose," "common" non-expressive purpose, and "dominant" non-expressive purpose. To the extent these terms are unclear when read in isolation, they find clarity when read in context with the entire provision — the ordinance provides clear limiting examples illustrating the meaning of these terms. *See, e.g.*, *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 783 (9th Cir. 2006) (concluding there was no vagueness where " '[i]ndirectly' is an easily understood word in common

English usage. In the context in which it is used, it is neither vague nor difficult to understand"); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972-73 (9th Cir. 2003) (upholding ordinance "that prohibits hotel operators from contributing to nuisance activities on or in 'close proximity to' the property" as not vague because when read in context with the examples provided in the ordinance, it gave sufficient notice of the conduct proscribed).

**[9]** Comparing Plaintiffs' sales of shea butter and incense to the conduct described in § 42.15 (2006), we readily conclude that their conduct falls well within the bounds of prohibited vending. Their products are not at all similar to vendor-created books, music, and artwork that may be sold — shea butter and incense are not inherently communicative and have more than nominal utility apart from any communication related to them. Further, Plaintiffs' products certainly have common and non-expressive purposes and fall squarely within the examples of prohibited items (and indeed, incense is even specifically listed as a prohibited item). Accordingly, Plaintiffs' conduct is clearly proscribed by 42.15 (2006) such that they cannot assert a vagueness challenge. *See Humanitarian Law Project*, 130 S. Ct. at 2719.

### b. Time, place, or manner restriction

**[10]** The time, place, or manner standard applies to fully protected speech in a public forum. *See S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1144 (9th Cir. 1998) (determining first that the First Amendment fully protects the expressive activities regulated by the ordinance at issue, and therefore proceeding to determine whether the County has placed legitimate time, place, and manner restrictions on these activities); *Perry*, 121 F.3d at 1368 (same); *see also Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (applying test for fully protected expression where commercial speech was inextricably intertwined with fully protected speech). But where only commercial speech is at issue, the time, place, or

manner framework does not apply and courts apply the framework articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557 (1980). *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001).

**[11]** Commercial speech is "defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001); *see also Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74 (1989) (stating that the proposal of a commercial transaction test is "the test for identifying commercial speech").[6] Where the facts present a close question, "strong support" that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983); *see also Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004) (applying *Bolger* factors).

**[12]** Commercial speech does not retain its commercial character "when it is inextricably intertwined with otherwise fully protected speech." *Riley*, 487 U.S. at 796; *see also Gaudiya*, 952 F.2d at 1066 (explaining that First Amendment protection applies to the sale of merchandise so long as the "sale of merchandise [ ] is inextricably intertwined with a statement carrying a religious, political, philosophical or ideological message"). Implicit in this standard, however, is that where the two components of speech can be easily separated,

---

[6]Although the Supreme Court has also defined commercial speech as "expression related solely to the economic interests of the speaker and its audience," *Central Hudson*, 447 U.S. at 561, cases decided after *Central Hudson* have relied on the "proposal of a commercial transaction" test. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (recognizing this definition in *Central Hudson*, but acknowledging that neither *Bolger* nor *Fox* used this definition); *see also Coyote Publ'n, Inc. v. Miller*, 598 F.3d 592, 598 (9th Cir. 2010); *White v. City of Sparks*, 500 F.3d 953, 957 (9th Cir. 2007).

they are not "inextricably intertwined." For example, *Fox* held that "tupperware parties" propose a commercial transaction even though the participants discuss subjects such as financial responsibility. 492 U.S. at 473-74. *Fox* explained that the commercial speech of selling tupperware is not "inextricably intertwined" with the fully protected speech because nothing "prevents the speaker from conveying, or the audience from hearing, . . . noncommercial messages, and nothing in the nature of things requires them to be combined with commercial messages." *Id. Fox* further reasoned: "[C]ommunications can "constitute commercial speech notwithstanding the fact that they contain discussions of important public issues. . . . We have made clear that advertising which 'links a product to a current debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Id.* at 475 (quoting *Bolger*, 463 U.S. at 67-68).

**[13]** We conclude that Plaintiffs are engaged in commercial speech. Unlike the nonprofit groups in *Gaudiya* who "inform individuals of their causes through distributing their literature, engag[e] in persuasive speech, and sell[ ] merchandise with messages affixed to the product," 952 F.2d at 1064, Plaintiffs clearly propose a commercial transaction. Indeed, the core of Plaintiffs' speech is directed to their products and why a consumer should buy them.

**[14]** Further, any noncommercial aspect of Plaintiffs' speech is not inextricably intertwined with commercial speech. Hunt and Dowd could easily sell their wares without reference to any religious, philosophical, and/or ideological element, and they could also express any noncommercial message without selling these wares. Considering all of the evidence, there is simply no meaningful nexus between the products sold (the commercial speech) and the information provided (the noncommercial speech) that would support a determination that the two are inextricably intertwined. Just as *Fox* concluded that "[n]o law of man or of nature makes it impossible to sell housewares without teaching home eco-

nomics, 492 U.S. at 474, Hunt could easily sell shea butter, and Dowd could easily sell incense, incense holders, and oil burners, without reference to any noncommercial message. Nothing in the nature of Plaintiffs' products requires their sales to be combined with a noncommercial message.

Plaintiffs' reliance on *Mastrovincenzo v. City of New York*, 313 F. Supp. 2d 280 (S.D.N.Y. 2004), and *Al-Amin v. City of New York*, 979 F. Supp. 168 (E.D.N.Y. 1997), is unavailing. *Mastrovincenzo* found that street vendors' sale of "graffiti" style clothing was sufficiently expressive to receive First Amendment protection, 313 F. Supp. at 282, 293, and the Second Circuit agreed in large part, concluding that these graffiti goods "serve a predominantly expressive purpose" because the artwork raised the price of the goods significantly and the vendor/artists were expressing themselves through this medium of art. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 97 (2d Cir. 2006). Unlike *Mastrovincenzo*, Plaintiffs are selling items that have a predominantly utilitarian, not an expressive, purpose and do not incorporate artwork created by Plaintiffs. Plaintiffs' communication neither adds to the price of their products nor becomes the dominant reason individuals purchase their products.

*Al-Amin* addressed whether individuals who propagated information regarding the Muslim religion and who sought donations in exchange for books, pamphlets, oils, and incense were engaged in protected speech. 979 F. Supp. at 169. Applying *Gaudiya*, *Al-Amin* found that the sale of these items "is not an expressive activity that is 'inextricably intertwined' with conveying a message about Islam . . . because the goods themselves do not bear a message, nor does their sale convey a particularized message that would likely be understood by the purchasers." *Id.* at 173. *Al-Amin* reasoned that "[t]he act of selling oils and incense simply is not sufficiently intertwined with the expression that plaintiffs are free to engage in, such as discussing the role of these products in Islam and

instructing passers-by in their use." *Id.* Such reasoning applies with equal force to Plaintiffs' conduct.

In sum, Plaintiffs are simply explaining the use and meaning of their products in an attempt to convince passers-by to purchase them. Plaintiffs' products on their own do not have any inherently communicative elements that make their sale constitute expressive activity, and nothing prevents Plaintiffs from espousing their beliefs without selling these products. To accept that Plaintiffs' incorporation of spiritual elements into their sales pitch and products transforms their proposal of a commercial transaction into fully protected speech would recast a broad range of vendors' sales pitches as protected speech. Viewing their conduct as a whole, however, confirms that the focus of Plaintiffs' speech is to sell their products as opposed to communicate a particular message to the public.

**[15]** We therefore hold that Plaintiffs' time, place, or manner restriction claim fails because they did not engage in conduct that is fully protected speech.

### c. Commercial speech

**[16]** We have recently explained the *Central Hudson* analysis for commercial speech as follows:

> In *Central Hudson*, the Supreme Court announced a four-part test for assessing the constitutionality of a restriction on commercial speech: (1) if 'the communication is neither misleading nor related to unlawful activity,' then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) '[t]he State must assert a substantial interest to be achieved by restrictions on commercial speech;' (3) 'the restriction must directly advance the state interest involved;' and (4) it must not be 'more extensive than is necessary to serve that interest.' "

*Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 903 (9th Cir. 2009) (quoting *Cent. Hudson*, 447 U.S. at 564-66).

"The last two steps of the *Central Hudson* analysis basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995) (internal quotation marks omitted); *see also World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 684 (9th Cir. 2010). The Supreme Court has explained that this "fit" requirement

> "is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the least restrictive means but, as we have put it in the other contexts . . . , a means narrowly tailored to achieve the desired objective." (internal quotation marks and citations omitted.)

*United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 218 (2003) (quoting *Fox*, 492 U.S. at 480). In general, "almost all of the restrictions disallowed under *Central Hudson's* fourth prong have been substantially excessive, disregarding far less restrictive and more precise means." *Fox*, 492 U.S. at 479.

**[17]** Plaintiffs take issue with the last *Central Hudson* inquiry only — *i.e.*, whether § 42.15 (2006) is more extensive than is necessary to serve the City's objectives in passing the ordinance. As § 42.15 (2006) recited, its purpose was to prevent unregulated vending, which, among other things, impedes orderly movement on the Boardwalk, adversely affects the historic character of the Boardwalk, undermines Boardwalk commercial life, causes visual blight, impedes emergency and public safety vehicles, and has led to altercations regarding the locations and amount of space individuals could occupy. *See* LAMC § 42.15(a) (2006). Section 42.15

(2006), by limiting the number of individuals that may set up booths and assigning individuals to particular spaces, is directed to addressing these concerns and is a reasonable fit with these purposes — limiting the number of individuals that may set up booths and assigning individuals to particular spaces ensures that pathways and spaces will be open for both pedestrians and emergency personnel and prevents unregulated vending.

We therefore reject Plaintiffs' claim that § 42.15 (2006) is an improper restriction on commercial speech.

### d. Prior restraint

**[18]** A "prior restraint" refers to an ordinance that either "vests unbridled discretion in the licensor," or "does not impose adequate time limits on the relevant public officials." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 894 (9th Cir. 2007) (citation signals omitted). For a prior restraint claim, the necessary injury in fact is the threat of the prior restraint — a party may challenge the ordinance even if he has not applied for a license. *Get Outdoors II, LLC*, 506 F.3d at 895. The converse of this statement, however, is that a party who has been granted a permit has not suffered any injury. *See IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1197 (9th Cir. 1988) ("We note that the county granted these plaintiffs licenses and therefore they may lack standing to challenge the licensing requirements as it applies to them. In any event, the fact that they have licenses militates against facial invalidation of the regulation."); *see also CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006) (recognizing that organization lacked standing to challenge provision where it "failed to present evidence that it has, or imminently will be denied a permit"); *cf. Get Outdoors II, LLC*, 506 F.3d at 894-95 (holding that plaintiff did not have standing to challenge the permit process where it could not "show that it would *ever* be genuinely threatened by an unconstitutional prior restraint in this case").

**[19]** Plaintiffs were granted Expression Permits and therefore were not injured by § 42.15 (2006)'s alleged failures to contain adequate standards and procedural safeguards in the permitting process. We therefore reject Plaintiffs' prior restraint challenge to § 42.15 (2006).**[7]**

### 3. LAMC § 63.44

The district court did not address LAMC § 63.44 due to Plaintiffs' assertion at the summary judgment hearing that "their suit centers on the two versions of § 42.15" and/or they "are primarily challenging the two versions of § 42.15." *Hunt*, 601 F. Supp. 2d at 1161 n.1. The record presented, however, does not establish an abandonment of these claims — according to the district court, Plaintiffs asserted only that they were primarily challenging the other two ordinances, not that they were dropping their claims regarding § 63.44. The district court should have therefore substantively addressed Plaintiffs' claims as to § 63.44. We therefore remand to the district court to address § 63.44 in the first instance.**[8]**

## C.   Damages and Attorneys' Fees

The City appeals the damages and attorneys' fees awards to Hunt, but has failed to preserve these issues on appeal.

---

**[7]**It is an open question whether the prior restraint doctrine even applies to commercial speech. *See Central Hudson*, 447 U.S. at 571 n.13 ("We have observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it."); *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 399 n.31 (9th Cir. 1982) ("The doctrinal question whether prior restraint analysis, *e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971), is properly applicable to any commercial speech question remains open." (citing *Friedman v. Rogers*, 440 U.S. 1, 10 & n.9 (1979); *Jay Norris, Inc. v. FTC*, 598 F.2d 1244 1252 (9th Cir. 1979)). We need not reach this issue, however, because Plaintiffs' claim fails for other reasons described above.

**[8]**The record does not make clear whether Dowd has standing to assert a claim pursuant to LAMC § 63.44, and the district court may address this issue in the first instance.

**[20]** As to the damages award, the City failed to bring a post-verdict motion pursuant to Federal Rule of Civil Procedure 50(b). *See Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) (stating that "failure to comply with [Rule 50(b)] precludes a later challenge to the sufficiency of the evidence on appeal"). Without a Rule 50(b) motion, the City cannot now make a sufficiency claim as to the jury's damages award.

**[21]** As to the City's arguments on the attorneys' fee award, an order on attorneys' fees is collateral to, and separately appealable from, the judgment. *See, e.g.*, *Culinary & Serv. Emps. Union, AFL-CIO Local 555 v. Haw. Emp. Ben. Admin., Inc.*, 688 F.2d 1228, 1232 (9th Cir. 1982); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1483 (9th Cir. 1996) (holding that an attorneys' fees award is not appealable until the amount of the award is set). "Compliance with these time limitations is both mandatory and jurisdictional." *Cel-A-Pak v. Cal. Agr. Labor Relations Bd.*, 680 F.2d 664, 666 (9th Cir. 1982); *see also Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement."). The City did not file a notice of appeal as to this issue — although the City filed a notice of appeal of the underlying judgment on May 14, 2009, the district court did not order the award of attorneys' fees until July 10, 2009, and the City failed to file any timely supplemental notice of appeal on the attorneys' fee issue. Accordingly, we do not have jurisdiction to review the attorneys' fee award. *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999) (holding the court lacked jurisdiction where the defendant failed to file a notice of appeal on the attorneys' fee issue because "a *supplemental notice of appeal is required for us to have jurisdiction over an attorneys' fees issue that becomes final subsequent to the initial notice of appeal"); see also Doughtery v. Lehman*, 711 F.2d 555, 558-59 (3d Cir. 1983). We therefore affirm the damages and attorneys' fee awards to Hunt.

## IV. *CONCLUSION*

We affirm the district court's judgment as to LAMC §§ 42.15 (2004 and 2006) in all respects. We remand, however, for the district court to address LAMC § 63.44 in the first instance.

**AFFIRMED in Part; REMANDED in Part. Each party shall bear its own costs on appeal.**